AMMONS v. BRUNSWICK–BALKE–COLLENDER CO.

(Circuit Court of Appeals, Eighth Circuit.   October 26, 1905.)

No. 2,154.

1. PROCESS—SUFFICIENCY OF SUMMONS—FORMAL DEFECTS.

A summons duly served on a defendant, which notifies him of the court, term, time, and place where he is required to appear and that he is required to answer the claim of plaintiff, is not fatally defective because it omits to state the penalty for his failure to appear as specified in the statute; the defect being one of form and not of substance, and especially where defendant appeared, and in a stipulation signed by the parties waived all irregularities in the process served.

2. CORPORATIONS—FOREIGN CORPORATIONS CARRYING ON BUSINESS IN INDIAN TERRITORY—CONSTRUCTION OF STATUTE.

Under Act Feb. 18, 1901, 31 Stat. 794, which provides that "before any foreign corporation shall begin to carry on business in the Indian Territory" it shall file a certificate designating a resident agent on whom process may be served, and also stating its principal place of business in the territory, and that if it fails to comply with such provisions all of its contracts with citizens and residents of the territory shall be void and shall not be enforced in its favor by any of the courts therein, proof that a foreign corporation, having no place of business in the territory, in a single instance completed an executory contract of sale therein by delivery of the property and taking notes and a mortgage for the purchase price through a local bank acting as its agent, is not sufficient to subject it to the penalty for "carrying on business" by rendering its notes and mortgage nonenforceable, though it never filed the statutory certificate.

[Ed. Note.—Foreign corporations "doing business" in state, see note to Wagner v. J. & G. Meakin, 33 C. C. A. 585.]

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 82 S. W. 937.

This was a suit in replevin instituted in the United States Court of the Indian Territory, Central Division, by the Brunswick-Balke-Collender Company, defendant in error, hereinafter called plaintiff, against J. H. Ammons, plaintiff in error, hereinafter called defendant, to recover possession of certain pool tables, bar furniture, mirrors, and other personal property which plaintiff alleges it sold and delivered to defendant, taking back a chattel mortgage conveying the same to it as security for payment of the purchase price. It is alleged that plaintiff is entitled to possession of the property in question because of breach of condition in the mortgage requiring payment within a specified time.   Defendant for his answer admits the sale, mortgage, and condition broken, but alleges that plaintiff, at the time the property was purchased by him, was a foreign corporation carrying on business in the Indian Territory without having complied with the provisions of the act of Congress requiring it to file its certificate designating an agent upon whom summons and other process might be served.   The parties waived a jury and submitted their cause to the trial court on the complaint and answer, together with the following agreed statement of facts:   "On January 9, 1902, the defendant, J. H. Ammons, wrote to the plaintiff, asking it to send him a catalogue for bar fixtures, pool and billiard tables, saying that he was going to open a new house; that the plaintiff mailed the defendant a catalogue on 11th of January, and that on January 14, 1902, defendant acknowledged receiving catalogue by letter to plaintiff, and in same letter asked plaintiff if it could furnish a 14-foot Twentieth Century outfit, and asked for lowest cash figures on a 14-foot Model outfit, also pool and billiard tables; that plaintiff wrote a reply giving prices of different outfits, which was received by defendant,

and defendant then ordered part of the goods sued for in this suit, and sent two notes and a cash payment, asking that the goods be shipped to Hartshorn, and in the same letter ordered more of the goods by way of a postscript, and inclosed $10 cash, and promised to send time notes for balance. In reply to this plaintiff mailed defendant time order blank to be signed by defendant, making order for the goods, and stating the price, and also returned to defendant the notes sent by him, and on February 14, 1902, defendant wrote plaintiff a letter and inclosed the time order signed by him. This time order stipulated that defendant agreed to execute notes and a mortgage to secure the balance of the purchase price and that title to the property should remain in plaintiff until said mortgage upon said property was given, and by correspondence it was agreed that the notes be made payable at the First National Bank in South McAlester. That on the 5th day of March, 1902, defendant wrote plaintiff and asked prices on Southern pool table and New York combination billiard and pool table. On March 7th plaintiff answered by mail, giving prices. On March 10, 1902, defendant ordered from plaintiff Southern pool table with complete outfit, $150, Delaware combination billiard and pool table with ivory balls, $225, and signed up the time order for these goods, and asked that the plaintiff ship goods to Hartshorn. That all the property sued for in this action was ordered by defendant on the time order blanks mailed defendant by the plaintiff. And that the plaintiff made out two mortgages, one dated on the 26th of February and the other March 31 1902, upon printed mortgages in blank used by plaintiff, covering the prop, erty sold defendant, and notes for balance of purchase money, and mailed the same in Chicago, Ill., the general office of plaintiff, to the First National Bank of South McAlester, to be signed and executed by the defendant. That plaintiff, under the terms of the order of defendant, was to ship goods and send bill of lading (B. L.) to First National Bank, with said notes and mortgages, the bank to deliver the B. L. when notes and mortgages were executed by defendant. The defendant signed both notes and mortgages, and acknowledged execution of mortgages before E. T. Bradley, a notary public at said bank, and left same with Mr. Bradley, cashier of First National Bank, who delivered to the defendant, the B. L. for goods. That when the notes became due the defendant failed and refused to pay them or any part thereof, and demand was made to defendant for the possession of the property covered by mortgage, and defendant refused to surrender property, and this suit was brought for the possession of the property by plaintiff as mortgagee; the mortgage giving the plaintiff right of possession upon default of payment of any note. Defendant gave retaining bond and kept the property. That there is still due plaintiff on the notes secured by mortgage from defendant $443. That the plaintiff is a corporation created under the laws of Ohio, doing business in Chicago as headquarters, and also in St. Louis. That it has no office in the Indian Territory, and only sells goods to parties on order in the Indian Territory, and that all letters from defendant were addressed to the plaintiff, either to St. Louis or Chicago office, and that all replies were made by the plaintiff from the said office in St. Louis or Chicago, and property was shipped from Chicago, Ill. That the cashier of the bank, Mr. Bradley, received no pay for his services. The plaintiff had never designated an agent in the Indian Territory upon whom service of process may be made. That defendant is a resident of the Indian Territory. That the value of each article of property is one-fifth less than amount set out in affidavit by plaintiff, and the total value of $443."

The trial court rendered judgment for the plaintiff. This in due course of procedure was affirmed by the United States Court of Appeals in the Indian Territory. To reverse this judgment the defendant brings the case here by writ of error. The following errors are assigned: First, that the lower court erred in not quashing the summons and order of delivery, and the Court of Appeals erred in not reversing the judgment for that reason; second, the lower court erred in finding the issues of fact and law in favor of plaintiff, and in holding that plaintiff was not doing business in the Indian Territory within the intent and meaning of the act of Congress, and the Court of Appeals erred in not reversing the judgment for that reason.

J. E. Whitehead, for plaintiff in error.
T. C. Humphrey and Horton & Brewer, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The contention that the summons was void merits little consideration. Section 5658 of Sandels & Hill's Digest of the Statutes of Arkansas, relating to summons in civil actions, is as follows:

"The summons shall be directed to the sheriff of the county and command him to summon the defendant or defendants named therein, to answer the complaint filed by the plaintiff (giving his name) at the time stated therein, under the penalty of the complaint being taken for confessed, or of the defendant being proceeded against for contempt of court on his failure to do so. The summons shall be dated the day it is issued and signed by the clerk."

The summons in this case was embraced in and constituted a part of the order of delivery of the property. After commanding the officer to take from the defendant the possession of the property, the summons proceeds as follows:

"You are also commanded to summons the said J. H. Ammons to appear in the United States Court in the Indian Territory, Central District, at South McAlester, in said Indian Territory, on the first day of the next January, 1903, term thereof, the same being on the 5th day of January, 1903, to answer the claim of said plaintiff for said property and also for damages amounting to fifty dollars ($50.00) for the detention thereof, and notify the said J. H. Ammons of the time and place of trial and then and there make due return of this order."

Defendant claims that this summons was defective, because it failed to embody the words found in section 5658, supra, namely, "Under the penalty of the complaint being taken for confessed." We cannot agree with this contention. The summons was explicit with respect to the court, term, time, and place at which defendant was required to appear. The summons also notified the defendant that he was required to answer the claim of the plaintiff, not only for the property, but also for the damages for detention thereof. The mere fact that the summons did not contain a statement of the consequence following a failure to appear does not avoid the summons itself. The omission of these words was, at most, an irregularity—a defect in form, not of substance.

In the case of Rice Stix Co. v. Dale & Richardson, 45 Ark. 34, the Supreme Court of Arkansas had occasion to construe the section of the statute in question. The court there says:

"The process served upon him [the defendant] distinctly shows that an action had been instituted against him and that he was required to answer it. This is a special office of a summons. * * * The statutory form of writs and process should be strictly observed, but the court is required to disregard any defect which does not affect the substantive rights of a party."

We are of opinion that the omission of the words in question in no manner affected the substantive rights of the parties. The summons performed its function. It brought the defendant into court, and in due time thereafter the defendant and the plaintiff entered

into a stipulation continuing the case until the next term, and in doing so made use of the following words:

"We agree that the summons and the order of delivery was served upon the defendant on the 26th day of May, 1902, by delivering to him a true copy of the annexed, which is by this agreement made the original, order herein on said day, and defendant waives all irregularities in the same, and it is further agreed that the case be continued until next term of this court."

Language cannot more clearly express a thought than does this language express the thought that all irregularities in the summons and order of delivery were waived by the defendant. The word "same" in the concluding clause of the agreement grammatically and naturally refers to the subject of the sentence in which it appears, namely, to the "summons and the order of delivery." For both reasons, therefore, because the summons was not substantively defective on account of the omission of the words in question, and because the defendant, in order to secure a continuance of the case, agreed to waive all irregularities in the summons, we conclude that there is no merit in the first assignment of error.

We are now brought to consider the question whether the failure to file the certificate as alleged in the answer and as admitted in the agreed statement of facts constitutes a defense to plaintiff's action. The law making provision for the certificate is found in an act of Congress, entitled "An act to put in force in the Indian Territory certain provisions of the laws of Arkansas relating to corporations and to make said provisions applicable to said territory," approved February 18, 1901, 31 Stat. 794. Section 4 (page 795) of this act reads as follows:

"That before any foreign corporation shall begin to carry on business in the Indian Territory it shall, by its certificate, under the hand of the president and seal of such company, filed in the office of the clerk of the United States Court of Appeals for the Indian Territory, designate an agent, who shall reside where the United States Court of Appeals for the Indian Territory is held, upon whom service of summons and other process may be made. Such certificate shall also state the principal place of business of such corporation in the Indian Territory. Service upon such agent shall be sufficient to give jurisdiction over such corporation to any of the United States Courts for the Indian Territory. If any such agent shall be removed, resign, die or remove from the Indian Territory or otherwise become incapable of acting as such agent, it shall be the duty of such corporation to appoint immediately, another agent in his place as hereinbefore provided."

Section 5 of this act reads as follows:

"That if any foreign corporation shall fail to comply with the provisions of the foregoing sections, all its contracts with citizens and residents of the Indian Territory shall be void as to the corporation, and no United States Court in the Indian Territory shall enforce the same in favor of the corporation."

The defendant invokes these provisions of law for his protection. In so doing he pleads affirmatively that plaintiff was a foreign corporation at the time it sold him the goods in question, and was carrying on business in the Indian Territory without having filed the certificate required by the act of Congress. The burden of proof was on him to sustain this plea. This he sought to carry by the use of the

agreed statement of facts. This agreed statement is the equivalent of a special finding of facts. Supervisors v. Kennicott, 103 U. S. 554, 26 L. Ed. 486; Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373. Accordingly, no question is or can now be raised except the one question whether the facts found in the special finding or its equivalent, the agreed statement, are sufficient to support the judgment. Lehnen v. Dickson, supra; Citizens' Bank v. Farwell, 11 C. C. A. 108, 63 Fed. 117, and cases there cited. The facts disclose, without doubt, that plaintiff was a foreign corporation, and had not filed the certificate required by the act of Congress, but the question is still open whether the defendant has shown that the plaintiff was carrying on business within the true meaning of the act of Congress in the Indian Territory at the time it sold the goods to the defendant.

The purchase of the goods was the result of correspondence between plaintiff and defendant. The goods were paid for partly in cash, and the balance was to be paid at some later day; the payment of the same being secured by a chattel mortgage. Plaintiff, whose general office was in Chicago, prepared the note and mortgage for execution by defendant and sent them, together with a bill of lading for the goods which it cotemporaneously shipped, to the First National Bank of South McAlester, Ind. T., with instructions to secure the execution of the note and mortgage by defendant, and upon so doing to deliver to him the bill of lading, which constituted a symbolical delivery of the goods themselves. These instructions were followed, and defendant, upon executing the note and mortgage at South McAlester, delivered the same to the cashier of the First National Bank of South McAlester for plaintiff, and at the same time received from him the bill of lading entitling him to take possession of the goods purchased. It thus appears that the transaction between plaintiff and defendant was concluded at South McAlester. It was there that plaintiff delivered the goods to the defendant, and that defendant settled for the same by executing his note and mortgage and delivering the same to the cashier of the bank for plaintiff. The cashier was plaintiff's agent to perform the executory contract entered into by prior correspondence, and this performance constituted a business transaction between plaintiff and defendant within the Indian Territory. But this is the only transaction which defendant has shown, to bring plaintiff within the denunciation and penalty of sections 4 and 5 of the act of Congress of February 18, 1901, supra. The language of the agreed statement of facts that plaintiff "only sells goods to parties on order in the Indian Territory" is quite too indefinite and uncertain as proof of such actual transactions to subject plaintiff to the highly penal provisions of the act in question. The language of the agreed statement just quoted could obviously be truthful if the transaction between plaintiff and defendant was the only one which plaintiff had ever conducted in the Indian Territory. If there had been business transactions between plaintiff and citizens and residents of the Indian Territory besides the one between plaintiff and defendant which affords the occasion of this suit, or if other such transactions had been contemplated, such facts could doubtless

have been readily shown; but, whether so or not, the burden was on defendant to establish his defense, and if he failed to do so for want of proof it was his own misfortune.

We consequently have the question presented whether proof of one business transaction in the Indian Territory, with nothing more, without filing the certificate required by the act of Congress, is sufficient evidence of a purpose "to carry on" a business, to subject plaintiff to the provisions of the act in question. An analysis of the act, in our opinion, discloses that Congress had in mind the conduct of some regular or systematic business. The requirement for filing a certificate is predicated upon the existence of a purpose to "carry on business." To "carry on" means, according to lexicographers, to "promote," "advance," or "help forward" (Webster). "Business" means (1) "That which busies" or "that which occupies the time, attention, or labor of one as his principal concern, whether for a longer or shorter time." (2) "Any particular occupation or employment engaged in for a livelihood or gain, as agriculture, trade, art, or a profession." (3) "Mercantile transactions or traffic in general." (Webster.) All these definitions imply, if not express, the idea of some permanency or durability; something more than a single temporary or spasmodic undertaking. This thought, in our opinion, is involved in that portion of the act providing what the certificate shall contain. It says:

"Such certificate shall also state the principal place of business of such corporation in the Indian Territory."

This necessarily implies that the business of a foreign corporation before the filing of the required certificate becomes imperative, shall have become of such serious contemplation that it has some principal place in the Indian Territory where it is to be carried on. The foregoing considerations seem to strongly indicate that a single transaction like that disclosed in the agreed statement of facts was not intended by Congress to subject the actor to the confiscation denounced by section 5 of the act. In this view of the statute we are supported by abundant authority.

The case of Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, was one involving a statute of the state of Colorado similar to the act of Congress now under consideration. The Legislature of that state, with a view of carrying into effect a constitutional provision, enacted that:

"Foreign corporations shall, before they are authorized or permitted to do any business in this state, make and file a certificate, * * * designating the principal place where the business of such corporation shall be carried on in this state and an authorized agent or agents in this state residing at its principal place of business upon whom process may be served."

It appears that a foreign corporation, having its principal place of business in Ohio, entered into a contract with the defendants, citizens of Colorado, by which it was agreed that the corporation should sell and deliver to the defendants, a steam engine and other machinery, in consideration whereof the defendants were to pay the corporation the price stipulated in the contract. The machinery was de-

livered and the purchasers refused to pay, pleading, among other defenses, that when the contract was entered into the plaintiff corporation had not made and filed the certificate required by the statute of Colorado already quoted. Mr. Justice Woods delivered the opinion of the court. He observes as follows:

"Reasonably construed, the Constitution and statute of Colorado forbid, not the doing of a single act of business in the state, but the carrying on of business by a foreign corporation without the filing of the certificate and the appointment of an agent as required by the statute. The Constitution requires the foreign corporation to have one or more known places of business in the state before doing any business therein. This implies a purpose at least to do more than one act of business. For a corporation that has done but a single act of business, and purposes to do no more, cannot have one or more known places of business in the state. * * * The statute passed to carry the provision of the Constitution into effect, makes this plain, for the certificate which it requires to be filed by a foreign corporation must designate the principal place in the state where the business of the corporation is to be carried on."

Then, after defining some words employed in the act, he continues:

"The obvious construction, therefore, of the Constitution and the statute, is that no foreign corporation shall begin any business in the state, with the purpose of pursuing or carrying it on, until it has filed a certificate designating the principal place where the business of the corporation is to be carried on in the state, and naming an authorized agent, residing at such principal place of business, on whom process may be served. To require such a certificate as a prerequisite to the doing of a single act of business when there was no purpose to do any other business or have a place of business in the state, would be unreasonable and incongruous."

To the same effect, also, is the case of Florsheim, etc., Co. v. Lester, 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162. The Legislature of that state passed an act to carry into effect a constitutional provision of the state that:

"Before any foreign corporation shall begin to carry on business in the state, it shall, by its certificate * * * filed in the office of the Secretary of State, designate an agent * * * upon whom service, summons and other process may be served."

Plaintiff in that case had taken a mortgage from the defendant in the state of Arkansas to secure payment of money which the defendant owed for the purchase price of goods sold him on credit. Suit was brought to foreclose the mortgage. A defense was interposed that the plaintiff, a corporation, had failed to file a certificate pursuant to the provisions of the Arkansas statute. The Supreme Court of that state in its opinion says:

"The only question in this case is whether the taking of a single mortgage in this state, by a foreign corporation, for a past-due indebtedness for goods sold in the foreign state, the domicile of the foreign corporation, is doing business in this state within the meaning of the Constitution and the act of the General Assembly above quoted. * * * There is a division of authorities on this question. But we think the better view of the question is presented in Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137."

After quoting generously from the opinion in the last-mentioned case, the Supreme Court of Arkansas follows it, and rules accord-

ingly. Of similar import are the following cases: Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 148; Gates Iron Works v. Cohen, 7 Colo. App. 341, 43 Pac. 667; Potter v. Ithaca Bank, 5 Hill, 490; Suydam v. Morris Canal & Banking Company, 6 Hill, 217; Milan Milling, etc., Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135; Babbitt v. Field (Ariz.) 52 Pac. 775; Gilchrist v. Helena H. S. & S. R. Co. (C. C.) 47 Fed. 593.

The foregoing would seem to be decisive of the present case; but counsel for defendant insists that the case of Chattanooga Building, etc., Association v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870, is inconsistent with the views so far expressed, and fully sustains him in his contention. That case arose in Alabama, and turned upon the proper interpretation of a constitutional and legislative provision of that state. Article 14 of its Constitution (1875) ordains that no foreign corporation "shall do any business" in that state without having at least one known place of business and an authorized agent or agents therein. Section 1316 of the Code of Alabama of 1896, enacted in execution of the constitutional provision, provides that every foreign corporation, "before engaging in or transacting any business" in the state, shall file a statement in writing, designating its place of business and appointing an agent. It cannot escape observation that these constitutional and statutory provisions are more restrictive than the act of Congress now in question. In Alabama the certificate is required to be filed by foreign corporations before "engaging in or transacting any business" in the state. In the Indian Territory the certificate is required to be filed before the "foreign corporation shall begin to carry on business in the Indian Territory." The Supreme Court of Alabama had, before that suit was instituted, placed its own construction upon the constitutional and statutory provisions referred to. In Farrior v. New England Mortgage Security Co., 88 Ala. 275, 7 South. 200, it held that these provisions were violated by the doing of a single act of business by a foreign corporation in the exercise of its corporate functions. See also, Ginn v. New England Mortgage Security Co., 92 Ala. 135, 8 South. 388, and Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 South. 941, 25 L. R. A. 543.

It is a well settled rule that the construction placed upon local laws by the highest court of the state which enacted them is followed by the National courts; and this rule seems to have been followed in the Chattanooga Building, etc., Association Case. After discussing the Farrior Case and the other Alabama cases just cited, the Supreme Court uses the following language:

"These cases constitute an interpretation of the constitutional and statutory provisions, and clearly hold that any act in the exercise of corporate functions is forbidden to a corporation which has not complied with the Constitution and statute."

For the reasons, therefore, that the phraseology of the act of Congress applicable to the Indian Territory is essentially different from that employed in the Alabama Constitution and statutes, and for the further reason that the Supreme Court of Alabama had placed an interpretation upon its own laws which was necessarily followed in the Chat-

tanooga Building, etc., Association Case, we are of opinion that the last-mentioned case is not controlling authority in favor of the defendant in this case, and, for the same reasons, that it is not inconsistent with the doctrine of Cooper Manufacturing Co. v. Ferguson, supra.

It results that the judgment of the United States Court of Appeals in the Indian Territory was correct. It is therefore affirmed.