FLINT & WALLING MFG. CO, v. McDONALD et al.

Where a foreign corporation sold a water tank and tower to one who was erecting a system of waterworks in the state, the transaction was within the commerce clause of the federal Constitution, and was valid, notwithstanding failure to file its articles of incorporation or appoint a resident agent, as required by the state laws.

The fact that plaintiff agreed to erect the water tank and tower in the state did not take the contract out of the protection of the federal Constitution.

(Opinion filed, January 15, 1908.)

Appeal from Circuit Court, Minnehaha County. Hon. J. W. Jones, Judge.

Action by the Flint & Walling Manufacturing Company against A. D. McDonald and others. From a judgment for plaintiff, the Western Surety Company and others, defendants, appeal. Affirmed.

*Joe Kirby,* for appellants. *Bailey & Voorhees* and *Frederic B. Eaton,* for respondent.

CORSON, J. This action was instituted by the plaintiff, a corporation organized and existing under the laws of the state of Indiana, to foreclose a lien for machinery furnished and set up by the plaintiff as subcontractor at the village of Carthage, in this state. Findings and judgment being in favor of the plaintiff, the defendants, Western Surety Company, E. G. Kennedy, an1 Van Buren, Heck & Marvin Company, have appealed.

In the spring of 1904 the village of Carthage entered into a contract with the defendant A. D. McDonald, who seems to have been transacting business under the name of the Sioux Falls Construction Company, for the construction of a plant for waterworks in the village of Carthage. In July of that year the said Sioux Falls Construction Company enterred into a contract with the plaintiff as a subcontractor to furnish and erect a water tank and tower, and thereupon the said plaintiff proceeded to erect in accordance with the contract the said tank and tower as a part of said waterworks system. Late in the fall of 1904 the system of waterworks was completed by McDonald to the satisfaction of the trustees of the village of Carthage, and there remained a balance due him thereon of something over $1,900, which that village holds

for such parties as the court may adjudge to be entitled to the same. Certain smaller lien-holders who are made parties defendant to this action filed liens upon the property amounting to something over $400, which liens are conceded by the plaintiff and the other defendants to be valid liens, and hence will not be further considered in this opinion. The plaintiff also filed its claim for lien in the proper office, and judgment was thereafter entered thereon in favor of the plaintiff, subject to be paid pro rata with the other liens heretofore referred to. The defendant, the Western Surety Company, claims to be entitled to $150 of the money so held by the village of Carthage, under and by virtue of attachment proceedings against the defendant McDonald; and the defendant Van Buren, Heck & Marvin Company claims the money in the possession of the village of Carthage under and by virtue of a judgment entered in the United States Circuit Court for the Southern Division of the District of South Dakota, and execution issued thereon against the said McDonald. At the time the contract was entered into between McDonald and the plaintiff the plaintiff had not filed in articles of corporation or appointed a resident agent, as required by the Code of this state, and no such copy was filed or resident agent appointed until on or about December 3, 1904, two days before the filing of its lien.

It is contended by the appellants, the attaching and judgment creditors, that by reason of the failure of the plaintiff to file its articles of incorporation and appoint a resident agent prior to entering into the contract, as required by the provisions of the Code as construed in the case of American Copying Co. v. Eureka Bazaar, 20 S. D. 526, 108 N. W. 15, 9 L. R. A. (N. S.) 1176, it is not entitled to recover, as the contract between the contractor and the plaintiff was a Dakota contract, which was to be performed within this state. It is further contended by the appellants that as the plaintiff contracted to erect and set up the plant as well as to furnish the same, it ceased to be a transaction within the commerce clause of the federal Constitution. The plaintiff, in support of the judgment of the Circuit Court, insists that notwithstanding the agreements to erect and set up the tower and tank as a part of the waterworks system of the village of

Carthage the contract was still within the provisions of the commerce clause of the federal Constitution, and the plaintiff is therefore entitled to recover for the machinery so furnished.

We are inclined to take the view that the plaintiff is right in its contention. The sale of its machinery by the plaintiff comes clearly within the commerce clause of the federal Constitution, and such a contract is valid in this state notwithstanding the provisons of its Constitutions and laws. The case of Cooper Manufacturing Company v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739. Mr. Justice Matthews in a concurring opinion in speaking upon this subject says: "Whatever power may be conceded to a state to prescribe conditions on which foreign corporations may transact business within its limits, it cannot be admitted to extend so far as to prohibit or regulate commerce among the states, for that would be to invade the jurisdiction which, by the terms of the Constitution of the United States, is conferred exclusively upon Congress. In the present case the construction claimed for the Constitution of Colorado, and the statute of that state passed in execution of it, cannot be extended to prevent the plaintiff in error, a corporation of another state, from transacting business in Colorado, which of itself is commerce. The transaction in question was clearly of that character. It was the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado. That was commerce; and to prohibit it, except upon conditions, is to regulate commerce between Colorado and Ohio, which is within the exclusive province of Congress. It is quite competent, no doubt, for Colorado to prohibit a foreign corporation from acquiring a domicile in that state, and to prohibit from carrying on within that state its business of manufacturing machinery. But it cannot prohibit it from selling in Colorado, by contracts made there, its machinery manufactured elsewhere; for that would be to regulate commerce among the states. The views expressed by Mr. Justice Matthews in the foregoing concurring opinion is fully approved by the Supreme Court of the United States in Crutcher v. Commonwealth of Kentucky, 141 U. S. 47. In that case the commonwealth of Kentucky required a license of certain parties

doing business of interstate commerce in that state, and the act was sustained by the Supreme Court of the state, but reversed by the Supreme Court of the United States. In its decision the latter court says: "To carry on interstate commerce is not a franchise or a privilege granted by the state. It is a right which every citizen if the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject. * * * The prerogative, the responsibility and duty of providing for the security of the citizens and the people of the United States in relation to foreign corporate bodies, or foreign individuals with whom they may have relations of foreign commerce, belong to the government of the United States, and not to the governments of the several states. and confidence in that regard may be reposed in the national Legislature without any anxiety or apprehension arising from the fact that the subject-matter is not within the province or jurisdiction of the state Legislatures. And the same thing is exactly true with regard interstate commerce as it is with regard to foreign commerce. No difference is perceivable between the two." Western U Telg. Co. v. Texas, 105 U. S. 460; Glouchester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826; Philadelphia & S. S. S. Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881; Norfolk & W. R. Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958. As was said by Mr. Justice Lamar in the case last cited: "It is well settled by numerous decisions of this court that a state cannot, under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burdens upon such commerce within its limits." That learned court further says: "We have repeatedly decided that a state law is unconstitutional and void which required a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it." Pickard v. Pull-

man Southern Car Co., 117 U. S. 34, 6 Sup. Ct. 635; Robbins v. Shelby County Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1; Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256; McCall v. Calfornia, 136 U. S. 104, 10 Sup. Ct. 881; Norfolk & W. R. Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958.

It is further stated by that learned court that as a summation of the whole matter it was aptly said by the present Chief Justice in Lyng v. Michigan, 135 U. S.. 161, 166, 10 Sup. Ct. 725, 726: "We have repeatedly held that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the occupation or business of carrying it on, for the reason that taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

It was held by the Supreme Court of Michigan in the case of Coit v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819, construing the provisions of their statute, which are substantially the same as our own, in regard to foreign corporations doing business in that state, that the Michigan statute had no application to foreign corporations whose business within the state consisted in the sale and delivery of goods or commodities made in other states, whether the contract for such sale be made in or out of the state. And the Supreme Court of Pennsylvania in Wolfe Dryer Co v. Bigler & Co., 192 Pa. 466, 43 Atl, 1902, an analogous case to the one at bar, says: "The contention that the plaintiff could not maintain an action in this state, because it was a foreign corporation, and had not complied with the provisions of the act of April 22, 1874 (P. L. 108), is without merit. It had no office or place of business in Pennsylvania, and no part of its capital was here. The machinery sold was shipped either directly from its factory in Chicago, or upon its orders given to other manufacturers. The fact that its agent came into this state and made contracts for machinery to be delivered here did not bring it within the inhibition of the act of 1874. Mearshon & Co. v. Lumber Co., 187 Pa. 12, 40 Atl. 1019, 67 Am. St. Rep. 560." In the case of Milan Mill-

ing, etc., v. Gorten, 93 Tenn. 590, 27 S. W. 971, 29 L. R. A. 135, the Supreme Court of Tennessee, construing the statutes of that state relating to foreign corporations doing business therein, held that they did not apply to a contract for the purchases of milling machinery sold by a corporation in the state of Indiana and set up in Tennessee, as such a sale came within the commerce clause of the federal Constitution, and that the corporation could recover for the value of the machinery in the courts of that state notwithstanding the failure to comply with its laws in not filing its articles of incorporation, and appointing a resident agent therein. In the case of the Pembina Mining Company v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, the Supreme Court of the United States in construing a similar act of the state of Pennsylvania uses the following language: "The only limitation upon this power of the state to exclude a foreign corporation from doing business within its limits, or hiring officers for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the federal government, is not to be restricted by state authority." Belle City Mfg. Co. v. Frizzell, 11 Idaho, 1, 81 Pac. 58.

It is contended by the appellants that, conceding that the plaintiff might be protected by the commerce clause of the federal Constitution in making the sale of the tank and tower to McDonald, yet its contract, connected with the erection of the tower and tank at the village of Carthage, took it out of the commerce clause of the federal Constitution; and they cite in support of their contention the case of Diamond Glue Company v. United States Glue Co., 187 U. S. 611, 23 Sup. Ct. 206. But this contention is clearly untenable. The case cited is clearly distinguishable from the case at bar. In that case the contract was to erect buildings for the manufacture of glue in the state of Wisconsin and to carry on the business of manufacturing therein. In the present case the contract of the plaintiff was for the sale of the machinery and incidentally the setting up of the same upon foundations prepared by the contractor McDonald, and such an adjustment of the tower

and tank did not in your opinion so far change the contract as to take it out of the protection of the commerce clause above referred to. In nearly all the cases referred to from which we have quoted it was a part of the contract that the machinery should be set up and adjusted by the seller, but this was not regarded as changing the nature of the contract or taking it out of the commerce clause.

In the view we take of the case at bar, it is not material to determine whether the contract made by the plaintiff was made within the state or in the state of Indiana, as the sale was clearly within the commerce clause provisions of the federal Constitution, and the plaintiff would be entitled to recover without regard to the place where the contract was made. The court in its opinion in the case of American Copying Company v. Eureka Bazaar, supra, made no reference to the commerce clause of the Constitution as that question was not presented in that case; but, of course, the opinion is to be understood as excepting from the provisions of our statute cases coming within the commerce clause of the federal Constitution, not affecting the police powers of the state, as it would not be competent for this state to pass any law that might in any manner interfere with that clause of the federal Constitution. The Circuit Court was clearly right, therefore, in holding that the plaintiff was entitled to recover notwithstanding its failure to comply with the provisions of our law. In the view we have taken of the case, it will not be necessary to express any opinion upon the other questons presented on this appeal as the judgment of the Circuit Court necessarily disposes of all of the funds held by the trustees of the city of Carthage among the lienholders.

The judgment of the Circuit Court and order denying a new trial are affirmed.