## SIOUX REMEDY CO. v. LINDGREN.

The transaction pursuant to a contract by which plaintiff agreed to ship goods from out of the state to defendant within it, to be sold by defendant as factor for plaintiff, is interstate commerce.

A foreign corporation does not have to comply with the laws of the state as to foreign corporations in order to sue in the state on an interstate commerce contract.

Under Civ. Code, §§ 1487, 1706, defining a factor, a contract by which plaintiff company agrees to ship to defendant, as soon as

convenient, certain remedies, and to refill the order as it sees fit to
do so, unless the agreement is canceled by mutual consent, and
defendant agrees to receive the goods and sell them at stated retail
prices, and each article sold by it is guaranteed to fulfill the recom-
mendations printed thereon, and plaintiff agrees that, as damages
for failure of such an article to do so, it will refund to the "con-
sumer" such sums as he shall have paid "the company" (plaintiff)
therefor, and plaintiff gives defendant the right to sell its remedies,
and it is provided that he shall keep on hand and distribute adver-
tising matter furnished by it, and that if he fails to fulfill any
agreement, and fails to sell the goods, it may take the goods back,
and cancel the contract—is a contract of agency, and not of sale.

Under Civ. Code, § 1249, providing that when, through fraud,
mistake, or accident, a written contract fails to express the real in-
tention of the parties, such intention is to be regarded, and the
erroneous part of the writing disregarded, it is competent for de-
fendant to show, relative to the provision of the contract, otherwise
making him a factor for sale of plaintiff's remedies, that he should
pay on demand the wholesale price of each article shipped to him,
that he did not understand the English language very well, and that
plaintiff's agent misrepresented the nature of the instrument he
signed by informing him that he was not required to buy or pay for
more than he could sell, and that, if he did not sell anything, it
was all right, plaintiff should have the right to take it back.

Defendant, who did not understand. English very well, having
signed a contract, which, in addition to making him a factor for
sale of plaintiff's remedies, provided that he should pay on demand
the wholesale price of each article shipped him, on the representa-
tion of plaintiff's agent that he was not required to buy or pay for
anything more than he could sell, and that, if he did not sell any-
thing, it would be all right, plaintiff should have the right to take
it back, such provision, under Civ. Code, § 1261, providing that
repugnancy in a contract must be reconciled, if possible, by such
interpretation as will give some effect to the repugnant clause, sub-
ordinate to the general intent and purposes of the whole contract,
may be construed· as one for payment to plaintiff· on demand of the
wholesale price of any articles actually sold by defendant.

Under Civ. Code, § 1256, providing that a contract may be
explained by reference to the circumstances under which it was
made, and the matter to which it relates, where plaintiff gave de-
fendant a contract which, in addition to making him a factor for
sale of its patent remedies, provided that he should pay on demand
the wholesale price of each article shipped him, defendant could
show that he was a shoemaker, who did not understand the English
language very well, that plaintiff, through its agent, asked permis-
sion to place a cabinet of its remedies in his shop, and by its agent,
when giving him the contract, by which his compensation was to be

the profits on sales, informed him that he was not required to pay for the articles till they were sold.

As affecting a written contract, which, in addition to making defendant a factor for sale of plaintiff's remedies, provided that he should pay, on demand, the wholesale price of each article shipped to him, defendant may prove the inducements held out to him by plaintiff, resulting in execution of the contract, that he should have the right to sell the goods, receive the profits, and only be liable to plaintiff for its proportionate share of their value when sold by him, and that there was no agreement by him at any time that he should pay for the goods consigned till he should sell them.

(Opinion filed, Feb. 23, 1911.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by the Sioux Remedy Company against Nels Lindgren. Judgment for defendant. Plaintiff appeals. Affirmed.

*Joe Kirby (Wm. Issenhuth, of counsel),* for appellant. *Bruell & Morris,* for respondent.

CORSON, J. This is an appeal by the plaintiff from a judgment entered upon a directed verdict in favor of the defendant. The action was instituted by the plaintiff to recover of the defendant the sum of $80 alleged to be due for a bill of merchandise sold and delivered to defendant. To the complaint the defendant interposed an answer making the statutory denial as to the incorporation of the plaintiff, and alleges: (1) That, if plaintiff is a corporation, it was organized and is a corporation existing under the laws of Iowa, and that plaintiff has not filed a certified copy of its articles of incorporation with the Secretary of State of South Dakota, and has not filed an appointment of a resident agent in the state of South Dakota, and has not appointed a resident agent for the state of South Dakota, and that said plaintiff has not complied with the laws of this state governing foreign corporations relative to the filing of its articles of incorporation and the appointment of a resident agent, and has no right to maintain an action within this state by reason of the facts aforesaid. (2) Further answering said complaint, this defendant alleges that he entered into a written contract or agreement with the plaintiff on or about the 12th day of July, 1909, at Redfield, Spink county, S. D.,

whereby the plaintiff consigned to the defendant certain goods and merchandise of no particular value, and that said contract provided that said goods should be sold by defendant for the plaintiff at certain fixed prices, and which contract further provided that, in case defendant failed to sell said goods, the plaintiff would have the right to take the same back and cancel said contract at any time they saw fit, and that the title to said property should remain in the plaintiff at all times. And defendant alleges that at no time was he the owner of said goods and merchandise; that the same was consigned to him by the plaintiff for the purpose of selling the same for the plaintiff; that defendant was unable to sell the same; that he never purchased said goods and merchandise of the plaintiff; that he is not indebted to the plaintiff in any manner, and that said contract is a South Dakota contract; that the plaintiff is a foreign corporation organized under the laws of Iowa, and cannot maintain an action in the state of South Dakota; that said contract is wholly void, and of no force and effect. (3) Defendant, further answering said complaint, alleges that said goods and merchandise was of no value; that he still has them in his possession subject to the order of the plaintiff; that he has been unable to sell any of them. Defendant further alleges that no demand for payment has ever been made upon him by the plaintiff. (4) Defendant denies each and every other allegation contained in said complaint not hereinbefore specifically admitted, and demands judgment for a dismissal of the action.

On the trial the plaintiff offered in evidence the contract alleged to have been executed on the part of the defendant, which was admitted by the court over the defendant's objection, and which, in substance, is as follows: "Agreement, made and entered into this 12th day of July, 1909, by and between Sioux Remedy Company, of Algona, Iowa, party of the first part, and Nels Lindgren, of Redfield, county of Spink, state of South Dakota, second party, witnesseth: That party of the first part agrees to ship unto second party, as soon as convenient, the goods hereafter set out; and to refill this order as often as the company sees fit to do so, unless this agreement is canceled by mutual consent of both parties.

Said second party agrees to receive said goods, and to sell the same at and for the retail prices as follows: Stock Food, wholesale price, $1.75 per sack, retail price, per sack, $3.00." Then follow 15 different remedies specifying the wholesale price and the retail price; and proceeds: "Said second party agrees to pay to first party, on demand, the wholesale price, as given above, of each article or package to be shipped, said goods to be consigned to second party at his address as above, unless otherwise directed hereon. The Sioux Remedy Company guarantees each and every article sold by it to fulfill the recommendation made as printed on such article, and agrees that as damages for failure of an article to fulfill such recommendation in every respect, when used according to directions, it will refund to the consumer such sums as he shall have paid the company therefor, on such articles complained of." Then follows a list of the goods to be shipped, including a part of the foregoing goods, "to be delivered f. o. b. cars at any distributing point. And the first party does also hereby give the second party the right to sell the Sioux Remedy Co.'s remedies. Not subject to countermand by second party, and said second party further agrees to keep on hand and distribute such advertising material as may be furnished by the party of the first part, free to the second party; and should second party fail to fulfill any of the above agreements, and fail to sell the goods, then the Sioux Remedy Company or their authorized employees will have the right to take the cabinet back and cancel this contract. The agent who makes this agreement for the company is a special agent for that purpose. The above is the whole contract between the parties. [Signed] Sioux Remedy Company, Nels Lindgren." Thereupon the plaintiff called the defendant as a witness, who testified in substance: That he executed the contract; that he received some goods from this company after he signed the exhibit, "about the same kind of stuff as is stated therein" that he received a case "of the goods" about a couple of weeks after he signed the exhibit, by express, and that he did not pay the company anything.

It is contended by the appellant that this contract of sale constitutes interstate commerce within the clause of the Constitu-

tion of the United States, and therefore the plaintiff was not required to file its articles of incorporation 'or appoint a resident agent as provided by the Civil Code of this state, in order to entitle him to maintain this action. We are of the opinion that the plaintiff is right in this contention. In the case of Flint & Walling Mfg. Co. v. McDonald et al., 21 S. D. 526, 114 N. W. 684, 14 L. R. A. (N. S.) 673, 130 Am. St. Rep. 735, this court held: "Where a foreign corporation sold a water tank and tower to one who was erecting a system of waterworks in this state, the transaction was within the commerce clause of the federal Constitution, and was valid, notwithstanding failure to file its articles of incorporation or appoint a resident agent, as required by the state laws." But in that case the plaintiff had filed its articles of incorporation and appointed a resident agent as required by the laws of this state prior to the commencement of the action. Hence, the precise question before us at this time was not decided. In the recent case of Rex Buggy Co. v. Dinneen, 23 S. D. 474, 122 N. W. 433, decided by this court, it was held that the plaintiff, "so far as the buggies and vehicles in the said warehouse were concerned, was transacting interstate commerce business, and was not amenable to the laws of this state in relation to foreign corporations, and had the right to pursue and regain possession of its property by suit without first having complied with the provisions of the statute in relation to 'foreign corporations"—citing Flint v. McDonald, supra, and Sucker State Drill Co. v. Wirtz, 17 N. D. 313, 115 N. W. 844, 18 L. R. A. (N. S.) 134, and note.

We add the following cases bearing upon this question: Herman Bros. Co. v. Nasiacos, 46 Colo. 208, 103 Pac. 301; McNaughton Co. v. McGirl, 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610; Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 South. 136; Rex Buggy Co. v. Dinneen, 23 S. D. 474, 122 N. W. 433; Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; Atlas Engine Works v. Parkinson (D. C.) 161 Fed. 223; Greek-Am. Sponge Co. v. Richardson Drug Co., 124 Wis. 469, 102 N. W. 888, 109 Am. St. Rep. 961;

Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Norfolk & W. Ry. Co. v. Sims, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254; Ammons v. Brunswick?Balke-Col. Co., 141 Fed. 570, 72 C. C. A. 614; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167. In the last case above cited, Mr. Justice Sanborn, speaking for the Court of Appeals of the Eighth Circuit, has written a very able and exhaustive opinion and reviewed the decisions upon the subject of the Supreme Court of the United States since its earliest organization, and the conclusion that seems to have been reached by that court is that the statute of Colorado, quite similar to the statute in force in this state, had no application to foreign corporations engaged in interstate commerce.

The respondent calls our attention to the case of Reed v. Todd, 127 N. W. 527, as holding a contrary doctrine, but the question we are now considering did not arise in that case, and the court in its opinion is careful to say that: "In all cases arising since its amendment the statute has been given that interpretation (that the corporation must comply with the laws of the state), and in all such cases not affected by the interstate commerce clause of the federal Constitution it has been given that effect." Clearly under the decisions of this court and of the state and federal courts the provisions of our law requiring foreign corporations to file their articles of incorporation and the appointment of a resident agent cannot be held to apply to corporations engaged in interstate commerce, and hence, assuming in the case at bar that the plaintiff was a foreign corporation and was engaged in the business of selling merchandise, it cannot be required by any law of this state to file its articles of incorporation or appoint a resident agent before maintaining an action in the courts of this state. Rex Buggy Co. v. Dinneen, supra.

This brings us to the more important question as to the nature of the contract under which the plaintiff seeks to recover in this action. It is contended by the appellant that under the clause in the contract which provides, "Said second party agrees

to pay to first party on demand, the wholesale price, as given above, of each article or package to be shipped, said goods to be consigned to second party at his address as above, unless otherwise directed hereon," constitutes a sale of the goods for which the defendant agreed to pay the wholesale price on demand, and that, therefore, the plaintiff was entitled to recover in this action.

It is contended, however, by the respondent that the contract introduced in evidence by the plaintiff is not a contract of sale, but is simply a contract of agency, wherein the factor received the goods and merchandise to sell for his consignor at a fixed price by the consignor, and that, therefore, the defendant was simply acting as agent of the plaintiff, and was not liable to pay for the goods shipped to him until he had sold and disposed of the same and received the consideration therefor. We are inclined to take the view that the defendant is right in his contention that the contract in this case is a contract of agency, and not of sale. Section 1487 of the Civil Code provides as follows: "The factor is an agent who, in the pursuit of an independent calling, is employed by another to sell property for him, and is vested by the latter with the possession or control of the property, or authorized to receive payment therefor from the purchaser." Section 1706, Civ. Code, provides as follows: "A factor is an agent who is employed to buy or sell property in his own name, and who is intrusted by his principal with the possession thereof, as defined in section 1487."

It will be observed that the second paragraph of the contract provides as follows: "That party of the first part agrees to ship unto second party, as soon as convenient, the goods hereafter set out; and to refill this order as often as the company sees fit to do so, unless this agreement is canceled by mutual consent of both parties. Said second party agrees to receive said goods, and to sell the same at and for the retail prices as follows." It will be observed that this is simply a contract of agency wherein the factor receives the goods and merchandise to sell for his consignor at prices fixed by the consignor. It is a continuing contract wherein the defendant acts as the factor, not only for one order,

but as long as the company sees fit to continue the agency. Again, there is a provision in the contract which clearly indicates that the defendant was merely a factor, which is as follows: "The Sioux Remedy Company guarantees each and every article sold by it to fulfill the recommendation made as printed on such article, and agrees that as damages for failure of an article to fulfill such recommendation in every respect, when used according to directions, it will refund to the consumer (not to the factor), such sums as he shall have paid the company therefor, on such articles complained of." Clearly, if the defendant had purchased these articles, there would be no contract between him and the company wherein the company was to pay the consumer, but this guaranty positively states that it will refund to the consumer such funds as the consumer shall have paid the company for such articles. Again, it is provided by the contract that the Sioux Remedy Company gives the defendant the right to sell the Sioux Remedy Company's remedies, and the defendant agrees to keep on hand and distribute advertising matter furnished by the plaintiff. Further, it is provided that, should the defendant fail to fulfill any agreement and fail to sell the goods, then the Sioux Company or their authorized employes will have the right to take the cabinet back and cancel the contract. It would seem, therefore, that no action could be maintained against the defendant by the plaintiff until the defendant had first sold the goods or part thereof. Construing all the provisions of the contract together, it is clear that the contract was one of agency, and not a sale of the remedies.

It clearly appears from the. the uncontradicted testimony of the defendant that the clause in the contract relied upon by the appellant for a recovery in this action as construed by it does not carry out the intention of the parties, and never was in fact assented to by the defendant. The defendant testified that he was a shoemaker; that he had been in this country about 2½ years; that he came from Sweden, and that he does not understand the English language very well; that there was an old lady came to see him about these goods about the time he signed the contract; that she came in that day and asked him if that com-

pany could put in a case of that kind of medicine in his shop, and said, "I hadn't to buy it or to pay any more than I could sell, and if I didn't sell anything, it was all right. They should have the right to take it back." This evidence was objected to by the plaintiff's counsel on the ground that it was irrelevant, immaterial, incompetent, and tended to contradict the terms of the written contract. The objection was overruled, and the plaintiff excepted, and now assigns this ruling as error. We are of the opinion that the court ruled correctly in admitting this evidence for several reasons. It is provided in the Civil Code under the head of Interpretation of Contracts, by section 1249: "When through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." And by section 1256 it is provided: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." And by section 1257 it is provided: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." And by section 1259 it is provided: "Particular clauses of a contract are subordinate to its general intent." And section 1261 provides: "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract." And section 1262 provides: "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." Clearly under the provisions of section 1249, which provides, "When through fraud, mistake, or accident, a written contract fails to express the real intention of the parties," such intention must be regarded and the written erroneous parts disregarded, it was competent for the defendant to show that through fraud, mistake, or accident the contract did not express the real intention of the parties in this action, or at least the real intention of the defendant in the action, as it is clear that the defendant never intended to contract to pay for the goods consigned to him

until he could sell the same, and the agent of the plaintiff, either intentionally or by mistake, misrepresented to the defendant the nature of the instrument which he signed, as she informed him that he was not required to buy or pay for any more than he could sell, and, if he could not sell anything, it was all right; they should have the right to take it back. As it affirmatively appears that the defendant did not understand the English language very well, he necessarily relied upon the statement of the old lady that he was not required to pay anything until he made a sale of the goods, and hence he was induced to sign the contract by the false representations of the agent, made intentionally or by mistake, which contained the clause which he had never agreed to or assented to as construed by the plaintiff. The evidence therefore was clearly admissible to show what the real contract was between the parties, and, in view of the evidence, the court is at liberty to give the contract such a construction as will protect the defendant by construing the clause relied upon as a contract to pay to the plaintiff the proportion of the money for the goods to which the plaintiff would be entitled upon a sale of the same, or any part thereof, on demand. This will evidently carry into effect the real intention of the parties as disclosed by the statement of plaintiff's agent at the time the contract was executed. This would give some effect to the repugnant clause as provided by section 1261 subordinate to the general intent and purposes of the whole contract.

This view of the contract is more favorable to the plaintiff than the theory that the agent intentionally misrepresented the nature of the contract to the defendant, as such a theory would lead to the conclusion that the plaintiff by means of this clause in the contract intended it as a trap to defraud the defendant, and to secure from him the payment for the goods consigned to him for sale without regard to the value of the goods or any sales made by him under his consignment. The evidence was also clearly admissible under the provisions of section 1256, which provides that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. It was

clearly competent, therefore, for the defendant to show that he was a shoemaker, that the plaintiff asked permission through its agent to place the cabinet of medicine in his shop, and gave him a contract authorizing him to sell the medicines receiving for his compensation therefor the profits that he might derive from the sales of the same, and that he was informed by the agent that he was not required to pay for the medicines consigned to him until the same should be sold.

It seems, therefore, too clear for argument that the clause in the contract relied on as construed by the plaintiff does not express the intention of the parties as disclosed by the evidence of the defendant and by the statement made by the plaintiff's agent, and that it must therefore be disregarded so far as it purports to require the defendant to pay for the goods consigned to him prior to their sale by him, and that the same never became binding or obligatory upon the defendant as construed by the plaintiff. Again, it was competent for the defendant to prove the inducement held out to him by the plaintiff through its agent, resulting in the execution of the contract. These inducements were, it will be observed, that the defendant should have the right to sell the goods, receive the profits, and should only be liable to the plaintiff for the plaintiff's proportionate share of their value when sold by the defendant, and that there was no agreement on the part of the defendant at any time that he should pay for the goods consigned to him until he should sell the same.

In De Pue v. McIntosh, 127 N. W. 532, this court in discussing a similar question says, after quoting the provisions of the Code providing that "'the execution of a contract in writing, whether the law requires it to be written or not, supersedes all of the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument,' nevertheless, as contended by the appellant, there are exceptions to the rule. And one of the exceptions seems to be that agreements or representations made prior to the written contract under which the party was induced to sign the contract may be shown; in other words, where the parol contemporaneous agreement was the

inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and where he executed the written contract upon the faith of the parol contract or representations, such evidence is admissible"—citing a large number of authorities. And this court quotes with approval the language of the Supreme Court of Pennsylvania in Walker v. France, 112 Pa. 203, 5 Atl. 208, in which that learned court, in discussing this subject, says: "That a written agreement may be modified, explained, reformed, or altogether set aside by parol evidence of an oral promise or undertaking material to the subject-matter of the contract made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it, must now be regarded as a principle of law so well settled as to preclude discussion." It is quite clear, therefore, that the evidence of the defendant above quoted was admissible and that it clearly shows that the clause in the contract under which the defendant claims the right to recover, as construed by the plaintiff, does not express the agreement entered into by the defendant with the plaintiff, and that, construing the provisions of the contract in connection with the evidence of the defendant, the proper construction to be given to that clause in the contract is that, when the sale is made by the defendant of the remedies consigned to him, the defendant should pay over to the plaintiff on demand such proportionate share of the moneys received as the plaintiff would under the terms of the contract be entitled to receive.

As it appears by the undisputed evidence that the defendant at the time this action was commenced had made no sales and received no moneys on account of the goods consigned to him, therefore the plaintiff failed to prove any cause of action against the defendant, and the court was clearly right in directing a verdict in favor of the defendant.

The judgment of the circuit court and order denying a new trial are affirmed.

McCOY, J., concurs in the result.  SMITH, P. J., dissents.