## HICKMAN vs. THOMAS.

1. H., an inn-keeper, furnishes G., who is not his guest, but a mail contractor, with stables and provender for his horses for more than two years, during which time they are under the care of, and fed by the servants of G., and regularly used by him in running his stages to and from the stables of H. *Held*—That H. has no implied lien on the horses for the debt thus contracted by G.

Error to the Circuit Court of Jefferson. Tried before the Hon. John D. Phelan.

Thomas, the defendant in error, claiming under a deed of trust, executed on the 25th October 1848, by William H. Grimes, brought an action of detinue against the plaintiff in error to recover eight horses. The plaintiff in error, who was the defendant below, rested his defence upon the assertion of

a lien on the horses, the foundation of which will be sufficiently understood by reference to the facts noticed in the opinion of the court.

ERNEST, for plaintiff in error:

1. The first question raised by the record is the extent of a landlord's lien. The evidence tends to show that it was on the faith of that lien that plaintiff fed the horses. The temporary use of the horses amounts to nothing if the landlord recovers them peaceably and enforces his lien.

2. The second question is that of a pledge raised by the evidence of the confession of Grimes, clearly showing that Grimes had pledged the horses for their feed.

WM. S. MUDD, for defendant in error:

1. To constitute a pledge for the security of a debt or other engagement, it is necessary that the thing should be actually delivered the pledgee, and that he should retain the possession of it. If the pledgee has not the actual possession, or if he delivers it back to the pledgor, his title terminates.—Story on Bailm. 202, § 299.

The only legal way in which property can be made a security for the payment of a debt when the possession remains with the debtor, is by deed of trust or mortgage, duly recorded as the statute requires.

But what proof is there of a pledge in this case? The only evidence on that point is, " that Grimes stated to two witnesses that Hickman need not be uneasy about his money, as he had a lien on the horses," &c. Does a statement like this establish a pledge? May it not be as reasonably supposed that Grimes refered to some other kind of lien as to that of a pledge?

2. To create the lien of an *inn keeper*, it is necessary, 1st: that the relation of guest should exist, that is to say, the person must be a traveller or way-faring man.—Story on Bailm. 311, § 477. 2d. The inn keeper must have the possession of the property and the possession must be continuous.

The proof shows that Grimes did not sustain the relation of guest to Hickman, during the time the latter furnished feed for the horses of the former. If Hickman had refused to feed

the horses under the circumstances, would he have incurred any liability to Grimes, by virtue of his obligation as an inn keeper? If he would not, then he ought not to be invested with any of the peculiar privileges of an inn keeper. An inn keeper is *only* bound to take in all travellers and way-faring persons, and to accommodate them, their horses and attendants, if he can do so, for a reasonable compensation.—Story on Balm. 310 & 311, § 475 and 476. Hickman might then have well refused to feed the horses of Grimes, which he was using in the transportation of the mail.

3. Possession is not only essential to the creation, but also to the continuance of the lien, and when the party voluntarily parts with the possession of the property upon which the lien has attached, he is divested of his lien.—2 Kent's Com. 638. This rule is laid down as applicable to factors, but it applies equally to inn keepers.

It does not in fact appear from the proof that Hickman ever had the possession of the horses before the death of Grimes. He furnished a stable and feed for them it is true, but the driver, who was employed by Grimes, fed, watered and attended them, and at all times had the control of them. If, however, it be admitted that Hickman did at one time have possession, it is shown that he daily parted with the possession voluntarily. If Grimes had made an absolute sale of the horses when they were away from Hickman's stable, under the circumstances disclosed in the bill of exceptions, will it be seriously contended by any one, that Hickman could have sued the purchaser and have recovered under his pretended lien as inn keeper? If he could not recover in a case like the one supposed, neither can he recover in the one at bar.

DARGAN, C. J.—The first question to be ascertained is whether Hickman, the defendant below, had a lien on the horses to pay for their feed? If he had not, it is immaterial to enquire whether the deed of trust from Grimes to the plaintiff was duly recorded or not, for the deed as between Grimes and Thomas the plaintiff is valid, and if the defendant had no lien on the horses he cannot resist a recovery.

The defendant is an inn keeper at Elyton, Grimes was a mail contractor, and carried the mail by stage coaches from

Tuscaloosa to the Blue Pond, about one hundred and forty miles. The horses were used by Grimes in running the stage from Elyton to another stand on the route and back. They were under the care of and fed by drivers in the employment of Grimes, but the defendant furnished stables and provender for them for more than two years, for which Grimes is indebted to him over four hundred dollars, and to secure this sum, he locked up the horses, asserting a lien on them, and refused to deliver them on the demand of the plaintiff.

We do not think that the defendant can claim a lien on the horses growing out of his character as an inn keeper, for Grimes, the original owner and who owes the debt, was not the guest of the defendant, and all the authorities agree in this, that to entitle an inn keeper to assert a lien on goods in his possession to secure a debt due to him from the owner, he must show that the owner was his guest, and as such became indebted to him. The law will then imply a lien in favor of the inn keeper, by which he may hold the goods of his guest, committed to his custody, until the charges and expenses incurred at the inn are paid.—Grinnell v. Cook, 3 Hill, 485, and the cases there cited.

The claim or debt due from Grimes to the defendant resembles a debt due to an agister of cattle, or a livery stable keeper, from a customer, who is not required to pay what may be due for their keep on every occasion that he may take possession of the horses or cattle for the purpose of using or employing them; and the law is well settled that neither the agister of cattle, nor the livery stable keeper, under such circumstances, can assert a lien on the cattle or horses to pay for their keep, unless by virtue of an express contract.—Cross on Lien, 214, 222; 5 Mees. & Welsb. 341.

The case of Grinnell v. Cook, before refered to, very much resembles the case under consideration. In that case, Tyler, the owner of the horses, resided in the same village with Grinnell, the inn keeper, but was not his guest. The horses were sent by Tyler to the stables of Grinnell, who fed them for some time, but they were used by Tyler and his servants. Cook a constable, levied an execution on them as the property of Tyler, and the question arose whether Grinnell had a lien on the horses to pay the amount due him for their keep.

The court decided against the lien of the inn keeper. This authority is directly in point, and conclusive to show that the defendant has no lien on the horses. To my mind there is also another reason why the law will not imply a lien in favor of the defendant. A lien in favor of an inn keeper or a trades-man consists in his right to retain the possession of the chat-tel in opposition to the title of the owner until some charge respecting it is paid, and if the possession is voluntarily sur-rendered to the owner, the lien is at an end—Beraw v. Waters, 3 C. & Payne, 520; 8 Mod. 172; Jackson v. Cummins, 5 Mees. & Welsb. 342. In this case, the horses were always in the possession of Grimes, and were regularly used by him until the defendant locked them up to secure a debt, some of which had been contracted for more than two years. They were therefore not in the possession of the defendant when the debt was contracted. This within itself would negative the exis-tence of a lien by implication of law.

The judgment of the Circuit Court upon the facts agreed was in conformity with law, and must be affirmed.