CHICKERING-CHASE BROS. CO., Appellant, vs. WHITE and another, imp., Respondents.

*January 10—January 30, 1906.*

*Foreign corporations: Right to transact business: Contracts: Statutes: Pleading: Evidence: Chattel mortgages: Renewal: Affidavit: Lien of boarding-house keeper: Essentials: Enforcement: Married women.*

1. Under sec. 1770b, Stats. 1898 (providing that no foreign corporation, with certain exceptions, shall transact business or hold or dispose of property in this state until it shall have filed an au-

thenticated copy of its articles in the office of the secretary of state, and that every contract made by such corporation affecting its personal liability or relating to property within this state before complying with the provisions of the statute shall be void on its behalf), a contract made or a lien acquired upon property outside of the state by a corporation not transacting business within the state at the time is not void.

2. The failure of the foreign corporation to comply with such statute is defensive matter, and all the facts necessary to bring a case within the statute must be proven or the defense will fail.

3. Where a foreign corporation held a chattel mortgage on property in Wisconsin, dated before the corporation had complied with sec. 1770*b*, Stats. 1898, and the evidence failed to show that the mortgage was made in this state, and there was no proof that the corporation had ever transacted any business of any nature in Wisconsin prior to the time it filed its articles, a defense that at the time of the execution of the mortgage the corporation had not filed a copy of its articles with the secretary of state is untenable.

4. Under sec. 2315, Stats. 1898, providing for renewal of chattel mortgages by affidavit, when the affidavit is made by any person other than the mortgagee, the fact of the agency must be sworn to by the affiant; a mere recital of the agency is not a part of the affidavit and is insufficient.

5. In such case parol evidence of the fact cannot cure the defect.

6. A contract by a married woman to pay for her board while living with her husband and while she is engaged in no business creates no liability against the wife.

7. Under sec. 3344, Stats. 1898, giving every innkeeper and boarding-house keeper a lien upon and right to retain possession of the baggage and effects of any guest or boarder for the amount due him, in order that such lien may exist there must be a debt for board due from the boarder to the boarding-house keeper.

8. Where a married woman living with her husband came with the husband to a boarding house and engaged board, the indebtedness for the wife's board is the husband's debt, and hence no lien could attach to her separate property which she herself brought to the boarding house.

9. In such case, even if there had been an express pledge by the wife of her property for the payment of the debt, it would not create a boarding-house keeper's lien under sec. 3344, Stats. 1898, but at best an equitable lien or charge, enforceable by proper action in a court of equity or equitable counterclaim in an action at law.

Chickering-Chase Bros. Co. v. White, 127 Wis. 83.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This is an action of replevin commenced August 13, 1904, by the plaintiff, a foreign corporation, to recover the possession of a piano detained by the defendants *L. J. White* and *M. J. White.* The plaintiff claimed title by virtue of a chattel mortgage upon the piano executed to it by the owner thereof, the defendant Mrs. Chas. T. Greene, on February 23, 1901, which mortgage was filed in the office of the city clerk of the city of Marinette March 10, 1901, and was claimed to have been renewed by an affidavit filed in the office of said clerk February 24, 1903. The defendants *White* were partners operating a boarding house in the city of Marinette, and claimed to retain the piano by virtue of a boarding-house keeper's lien thereon. Mrs. Chas. T. Greene was made party defendant but did not appear.

The action was tried by the court and findings of fact made in substance as follows:

(1) That the plaintiff, at the time of the execution of the mortgage, was and now is a foreign corporation.

(2) That the defendants *White* were, on the 9th day of April, 1903, and ever since have been, copartners engaged in keeping a hotel and boarding house in the city of Marinette.

(3) That the defendant Mrs. Chas. T. Greene was at the time of the execution of the chattel mortgage, and ever since has been, a married woman living with her husband.

(4) That at the time of the execution of the chattel mortgage Mrs. Greene was the owner of the piano in question.

(5) That she executed said chattel mortgage to secure payment of the sum of $325 to the plaintiff, and that a copy of the mortgage was filed in the office of the city clerk of Marinette March 10, 1901.

(6) That on the 24th day of February, 1903, there was filed in said city clerk's office and annexed to such copy of said mortgage an affidavit which, after the venue, reads as follows:

"Chas. A. Osgood, of and for the corporation of *Chickering-*

*Chase Bros. Co.,* being duly sworn, says that they are the original mortgagees named in a certain chattel mortgage bearing date the 25th day of February, 1901, executed by Mrs. Chas. T. Greene, of Marinette, to *Chickering-Chase Bros. Co.,* and that said corporation has still an interest in said mortgage to the amount of $241.49, being part of the original amount secured thereby which is yet unpaid, and that they claim a lien upon the property named in said mortgage to that amount by virtue thereof.

"Chickering-Chase Bros. Co.

"Chas. A. Osgood."

(7) That on March 4, 1902, the plaintiff filed in the office of the secretary of state of the state of Wisconsin a duly authenticated copy of its articles of incorporation, and that a license was then issued to the plaintiff to do business in this state, and that no copy of said articles had been theretofore filed in said office.

(8) That on April 9, 1903, the defendant Mrs. Greene became a boarder at the house of the defendants *White,* and remained so until July 2, 1903; that she returned as such boarder October 3, 1903, and remained until October 19, 1903; that she again returned as such boarder November 9, 1903, and remained until June 6, 1904.

(9) That the defendant Mrs. Greene agreed that she would pay for her board, furnished by the defendants *White,* at the rate of $6 per week while she was such boarder until March 28, 1904, and thereafter and until June 6, 1904, at the rate of $7 per week, and that she would charge her separate estate therewith.

(10) That on June 6, 1904, there became due to the defendants *White* from the said Mrs. Greene, on account of such board, $278.90, no part of which has been paid.

(11) That on or about April 9, 1903, Mrs. Greene, as such boarder, brought to the boarding house of the defendants *White* the piano in controversy, and that the same remained in said house and in possession of Mrs. Greene until June 6, 1904, and that thereafter and up to the present time said piano has remained in the defendants' said boarding house and in their possession.

(12) That on or about August 13, 1904, the plaintiff de-

manded possession of said piano from the defendants *White,* which demand was refused.

(13) That there is due from the defendant Mrs. Greene to the plaintiff, on account of the demand secured by said chattel mortgage, the sum of $267.88.

(14) That the value of said piano is $200.

As conclusions of law the court found:

(1) That the defendants *White* were and are creditors of the defendant Mrs. Greene in the sum of $278.90, for which her separate estate was and is chargeable.

(2) That the affidavit of renewal is insufficient in law, and that the lien of the plaintiff's chattel mortgage ceased as against the defendants *White* before April 9, 1903.

(3) That during the time in which said Mrs. Greene remained in the house of the defendants *White* the relation of boarder and boarding-house keeper existed between her and the said defendants *White.*

(4) That as against the said defendant Mrs. Greene the defendants *White* had continuously and now have as boarding-house keepers a lien upon and the right to retain possession of said piano for the amount due them from the said Mrs. Greene, to wit, $278.90, and that as against the plaintiff the said lien was and is superior to any lien or title which the plaintiff had or has by virtue of said chattel mortgage.

(5) That the defendants *White,* at the time of the demand aforesaid, were and still are the owners of a special interest or property in said piano to the amount of $278.90.

(6) That subject to such special interest of the defendants *White* the plaintiff has a special interest in said piano to the amount of $267.88.

(7) That by virtue of their special interest aforesaid the defendants *White* were at the time of said demand and still are entitled to the possession of the said piano.

(8) That the defendants *White* are entitled to judgment of dismissal of the complaint, with costs.

Plaintiff filed the following exceptions to the findings of fact:

"First. That the plaintiff excepts to the findings of fact in that the court does not find therein that Chas. A. Osgood,

affiant in the affidavit of renewal, mentioned in finding 6, then was general manager of the plaintiff.

"Second. The plaintiff excepts to said findings of fact because the court did not find therein that Mr. and Mrs. Chas. T. Greene both went to board with the defendants *L. J. White* and *M. J. White,* under an agreement between said defendants and the said Mr. Greene."

"Third. The plaintiff excepts to the ninth finding of fact and to the whole thereof."

Judgment was entered upon the findings dismissing the complaint, and the plaintiff appeals.

For the appellant the cause was submitted on the brief of *W. B. Quinlan,* attorney, and *Henry T. Scudder,* of counsel.

For the respondent there was a brief by *Hutchinson & Goldman,* and oral argument by *H. R. Goldman.*

WINSLOW, J.   This is a contest for the possession of a piano between a chattel mortgagee upon the one side and a firm claiming a subsequent boarding-house keeper's lien upon the other side.   The trial court held that the boarding-house keeper's lien was paramount, and the chattel mortgagee seeks to reverse the judgment upon this appeal.   In the trial court the validity of the alleged chattel mortgage was attacked on two grounds: (1) because the plaintiff was a foreign corporation and had not at the time of the execution of the mortgage filed with the secretary of state a copy of its articles of incorporation; (2) because the affidavit of renewal was insufficient upon its face.

As to the first of these contentions we are entirely satisfied that it is untenable.   Sec. 1770*b,* Stats. 1898, provides that no foreign corporation (with certain exceptions) shall transact business, hold or dispose of property in this state until it shall have filed an authenticated copy of its articles in the office of the secretary of state, and that every contract made by such corporation affecting its personal liability or relating to property within this state before complying with the pro-

visions of the statute shall be void on its behalf and on behalf of its assigns. The mortgage in question was admittedly made before the section had been complied with, but the difficulty is that it does not appear that the mortgage was made within this state. For all that appears on its face or in the evidence it may have been executed in Chicago, and there is no proof that the plaintiff has ever transacted any business of any nature in this state prior to the time when it filed its articles. The section does not render void a contract made or a lien acquired upon property outside of the state by a corporation not transacting business within the state at that time. As this is strictly defensive matter, all the facts necessary to bring the case within the statute must be proven or the defense will fail.

As to the second contention made by the defendants, the trial court correctly held that the affidavit of renewal was insufficient. Sec. 2315, Stats. 1898, provides that a chattel mortgage shall cease to be valid as against the creditors of the mortgagor or subsequent purchasers or mortgagees in good faith after the expiration of two years from its filing, unless within thirty days prior to the expiration of the two years the mortgagee, his agent or attorney, "shall make and file an affidavit setting forth the mortgagee's interest in the property." The affidavit in the present case was made by one Osgood, who is therein described as "of and for the corporation of *Chickering-Chase Bros. Co.*," but the affiant nowhere in the affidavit states under oath that he is the agent or attorney of the corporation. This is fatal. The fact of the agency must be sworn to by the affiant; a mere recital is not a part of the affidavit and is insufficient. *Hill v. Hoover,* 5 Wis. 354; *Miller v. C., M. & St. P. R. Co.* 58 Wis. 310, 17 N. W. 130, and cases cited. Nor could parol evidence of the fact cure the defect. *Iverslie v. Spaulding,* 32 Wis. 394. But, notwithstanding the insufficiency of the affidavit of renewal, the mortgage remained valid as between the parties and as against

Chickering-Chase Bros. Co. v. White, 127 Wis. 83.

all persons save creditors of the mortgagor and subsequent purchasers or mortgagees in good faith, and the question whether the defendants *White* had a valid lien as boarding-house keepers upon the property superior to the plaintiff's lien is yet to be determined.

'Our statute provides that every innkeeper and boarding-house keeper shall have a lien upon and retain possession of the baggage and effects of *any guest or boarder* for the amount which may be *due him* for board *from such guest or boarder* until such amount is paid. Sec. 3344, Stats. 1898. The court found that there was such a lien in this case which was superior to the plaintiff's right, if any, and hence dismissed the bill. The findings of fact on which the conclusion was based were, in brief: That Mrs. Greene was a married woman living with her husband and owned the piano in dispute; that on April 9, 1903, she became a boarder at the *White* boarding house, and remained such boarder with intervals of absence until June 6, 1904, and agreed that she would pay for her board $6 per week up to March 28, 1904, and thereafter $7 per week, and charge her separate estate therewith (there being no finding that she had any separate estate or property other than the piano, nor any separate business); that on the 6th of June, 1904, there was due from her to the defendants *White* for such board $278.90, which has not been paid; that she brought the piano to the boarding house on April 9, 1903, and that it remained there continuously up to the present time. Exception was duly taken to the findings because the court did not find that Mr. and Mrs. Greene both went to board with the defendants under an agreement between the defendants and Mr. Greene, and exception was also taken to the ninth finding, by which it was found that Mrs. Greene contracted to pay for her own board and agreed that she would charge her separate estate therewith. If these findings are to be construed as meaning that Mrs. Greene, at or near the time when she commenced to board with the defendants,

made any agreement to pay the *Whites* therefor or that she would charge her separate estate with her board, they are absolutely unsupported by a shred of evidence. On the contrary, the undisputed evidence, given by the defendant *L. J. White,* is that Mr. and Mrs. Greene came to the house together; that he had an agreement with *them* when they first came to charge them $12 per week; that the charges upon the books were made against "Charles T. Greene and wife;" that he frequently asked Mr. Greene for payments, and Mr. Greene made numerous promises to pay, and finally gave an order on a third person which was not paid; that he never spoke to Mrs. Greene about the matter until some time in March, 1904, when he told her he could not keep them any longer unless the bill was paid, at which she was surprised, and said that if he would let them stay she had some money of her own and would pay him every cent out of her own money, to which he replied that if she would pay the bill he would let the matter rest; that he had talks with both Mr. and Mrs. Greene about the bill, and they both told him "There was no need to worry, there is plenty of stuff here to secure you, the library, piano, and pianola," but they never said he could hold the piano or anything else if they did not pay, though he expected to do so. Mrs. Greene was not sworn upon the trial and the foregoing facts were testified to by *Mr. L. J. White,* the managing partner of defendants' firm, and are absolutely uncontradicted and must be considered as the exact facts of the case upon the points which they cover. The answer set up simply a boarding-house keeper's lien resulting from the alleged fact that Mrs. Greene came to the boarding house with the piano April 9, 1903, and engaged board and remained there as a boarder for the periods named in the findings, and became indebted therefor in the sum of $278.90. Nothing is said in the answer about any agreement to charge her separate property with her board. It seems apparent that the findings must have been drawn by the defendants' attor-

neys to meet the supposed exigencies of the case, and it hardly seems that they could have been examined by the trial judge with his usual care before signing. Attention is called to the remarks upon this subject contained in the case of *E. M. Fish ·Co. v. Young, post,* p. 149, 106 N. W. 795.

Considering the case upon the actual state of facts proven rather than upon the findings, there are several questions pre-sented. The sole defense pleaded was that the defendants were entitled to hold the piano by virtue of a boarding-house keeper's lien thereon, and this was the defense found and ad-judged by the court. In order that such a lien may exist un-der the statute (sec. 3344, *supra*), there must be a debt for board due from the boarder to the boarding-house keeper, and the initial question is whether the evidence here showed any debt at law due from Mrs. Greene to the defendants. Mrs. ·Greene was a married woman living with her husband, and when she and her husband came to the boarding house together and engaged board it is very plain that the contract thereby made was her husband's contract, and the debt incurred under it was her husband's debt and not hers. She could bind her-self at law for no debts except debts necessary or convenient to the beneficial enjoyment of her separate property or the ·carrying out of her separate business or in relation to her personal services. *Stack v. Padden,* 111 Wis. 42, 86 N. W. 568. A contract to pay for her board while living with her husband and engaged in no business is not included within the exception. This principle applies as well to the supposed arrangement made with the wife alone in March, 1904, as to the original contract alleged to have been made with both husband and wife in April, 1903. The indebtedness for the wife's board was at all times, therefore, the husband's debt and not the wife's, hence the lien could not attach to her sep-arate property which she herself brought to the boarding house, because there was nothing due to the boarding-house keeper *from her* for board, and such property is not liable for her husband's debts.

But it is further argued that she might legally charge her separate property with a lien to secure payment of the board bill, and that she did so in the present instance. There are at least two sufficient answers to this contention: (1) *Mr. White* admits that she never pledged the piano for her board or said that it might be held until the board was paid; (2) even should it be held that such a pledge was made and' the property thus charged in equity with the payment of the debt, a boarding-house keeper's lien under the statute would' not thereby be created, but at best an equitable lien or charge which would necessarily have to be declared and enforced by proper action in a court of equity, or at least by an equitable counterclaim in this action, and no such action has been· brought or counterclaim made.

The conclusions reached necessarily call for reversal of the· judgment.

*By the Court.*—Judgment reversed, and action remanded' with directions to render the proper judgment in replevin for· the plaintiff.