## ATLAS ENGINE WORKS v. PARKINSON.

(District Court, W. D. Wisconsin.　April 17, 1908.)

1. CORPORATIONS—STATE STATUTE AFFECTING FOREIGN CORPORATIONS—CONTRACTS RELATING TO INTERSTATE COMMERCE.

A contract made by a manufacturing corporation of Indiana, by which it made another its agent to sell its products, made in Indiana, in certain territory in Wisconsin, and agreed to ship goods to the agent to be sold by it on commission, such goods to remain the property of the corporation until sold, is a factorage contract relating to interstate commerce, and not within the provisions of Sanborn's St. Supp. 1906 (Wis.) § 1770b relating to foreign corporations doing business in the state.

[Ed. Note.—Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meaken, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

2. SAME—IMPLIED CONTRACTS.

The bankrupt, which was a Wisconsin corporation, and was acting as agent for claimant, an Indiana corporation, for the sale of certain ma-

chinery made by claimant, entered into a contract with another Wisconsin corporation to construct for it an electric lighting plant, and in doing so furnished it with a boiler made by claimant, which had been shipped to the agent for delivery to another customer. On learning of such sale, claimant wrote the purchaser, stating that it was the owner of the property and claimed a lien thereon. It also filed a mechanic's lien, and after the bankruptcy of the agent commenced a suit to foreclose the same. The purchaser, which had retained the amount from the bankrupt, with its consent paid the same to its trustee, under a stipulation that the respective rights of claimant, and the trustee thereto should be determined by the bankruptcy court. *Held* that, conceding claimant to have been doing business in the state, without having complied with Sanborn's St. Supp. Wis. 1906, § 1770b, relating to foreign corporations, its right to the money did not arise from any contract made by it and made unenforceable by such statute, but from the obligation of the purchaser, implied by law and protected by the mechanic's lien statute, to pay claimant for the property, and that such right was not affected by the fact that in the lien suit claimant inadvertently described itself as the principal contractor; no objection having been made by the defendant on that ground.

On Review of Decision of Referee.

Robert M. Bashford, John A. Aylward, and M. B. Olbrich, for claimant.

Richmond, Jackman & Swansen, for trustee.

SANBORN, District Judge. Claimant is a foreign corporation, organized under the laws of Indiana. It filed its claim against the Platteville Foundry & Machine Company, bankrupt, for $394.60, for the proceeds of a boiler belonging to claimant, sold by the bankrupt to the Empire Mining Company. In opposing the allowance of the claim the trustee answered, alleging, in substance, as the fact is, that the claimant is a foreign corporation, and has not complied with section 1770b of the Wisconsin Statutes (Sanborn's St. Supp. 1906), providing that foreign corporations doing business in this state shall file their charters with the Secretary of State, and make certain statements, pay license fees, etc.; and that if they fail so to do they shall pay a penalty. Those portions of the statute pertinent to the case are as follows:

"2. No corporation incorporated or organized otherwise than under the laws of this state, except * * * shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the Secretary of State a copy of its charter."

"3e. The corporation shall report the proportion of its capital stock represented in this state or its property located or to be acquired therein, or by its business to be transacted therein. In determining such proportion the property in this state or to be acquired therein, and the business transacted within and without the state within one year immediately preceding its filing the article shall be considered and controlling."

"7g. In case of foreign corporations who have already filed their charter or articles they shall report the proportion of their capital stock represented in this state or their property located and business transacted therein during the preceding year. Such foreign corporations shall pay fees amounting substantially to a dollar a thousand of their capital stock."

"10. All foreign corporations and the officers and agents thereof doing business in this state shall be subjected to all the liabilities and restrictions that are or may be imposed upon corporations of like character, organized under the laws of this state, and shall have no other or greater powers. Every contract made by or on behalf of any such foreign corporation, affect-

ing the personal liability thereof, or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them.

"11. The failure to comply with the provisions of this section shall, for such violation subject the corporation or any agent, officer or person acting for it in this state, to a penalty of five thousand dollars. * * *"

It is alleged that the claim depends on a contract made by a foreign corporation doing business in the state without complying with the statute relating to property within this state, and hence the contract is void on behalf of the claimant. The claim depends in part upon a contract not made with the claimant, but between the bankrupt and the Empire Mining Company, hence it does not expressly fall within the class of contracts made void by the statute. But it is urged that it is, in effect, covered by the statute, under the facts of the case, which appear from the record as follows:

On October 18, 1904, prior to the bankruptcy, the bankrupt made a contract with the Empire Mining Company to erect an electric lighting outfit, and furnish an Atlas automatic engine, a Stillwell heater, a boiler, etc., for a certain lump sum. In performance of the contract the bankrupt furnished a boiler belonging to the claimant, which had been shipped by it directly to Cuba City, Wis., under the contract of November 12, 1903, mentioned later, designed to be installed at the plant of the American Lead & Zinc Company. On November 19, 1904, the claimant, having learned that the engine had been delivered to the Empire Company, notified the latter that it claimed a lien on the boiler. Upon this the Empire Company requested the Platteville Company to state the amount owing for the material and machinery, subject to lien, and in reply the company furnished a list amounting to $1,122.29, which included the $394.60 here in question. Thereupon the mining company paid to the Platteville Company a balance on the contract between them, over the amount shown on the statement. In December, 1904, the claimant filed a mechanic's lien for the amount here claimed, by mistake claiming as a principal contractor instead of a subcontractor; and in October, 1905, it commenced suit in the state court to enforce the lien, still claiming as principal contractor. Meanwhile, in February, 1905, the Platteville Company was adjudged bankrupt, and its trustee was brought into the lien suit. A stipulation was made that the mining company might pay the amount claimed to the trustee, to be held by him subject to the rights of claimant and himself as trustee, to be determined by proper proceedings in the bankruptcy case. It was among other things stipulated as follows:

"Now, therefore, it is hereby stipulated, by said E. S. Parkinson as such trustee, and the Atlas Engine Works by their respective attorneys, that said Empire Mining Company may pay the amount of said indebtedness to said E. S. Parkinson, trustee in the above-entitled matter, to be by him held subject to the rights of the Atlas Engine Works and himself as trustee of the Platteville Foundry & Machine Company, to be determined by the proper proceeding in the above-entitled matter to the same effect as if the suit commenced in the circuit court for Grant county, Wis., had been prosecuted, and the said E. S Parkinson, as trustee, been made a party thereto; that upon the payment of said sum by the Empire Mining Company to the said E. S. Parkinson as trustee, either of the parties hereto may file a petition in said court, in said bankruptcy proceedings, to determine the right to said

fund, and that upon an answer being filed to said petition by the other party the matter shall proceed to a hearing before Hon. H. M. Lewis as referee, upon proofs to be submitted by the respective parties orally or by deposition, subject to review by petition or appeal by said court or by the Circuit Court of Appeals if either party shall feel aggrieved by any decision that may be rendered in said matter by said referee or said court; the purpose of this stipulation being to reach a speedy determination of the rights of the parties without the delay attendant upon a trial in the state court."

The money was paid accordingly, whereupon the Atlas Company claimed the whole of it, and brought a petition for it before the referee, who decided that the trustee was entitled to retain the whole fund, upon the ground that the claimant was doing business in the state without complying with the statute, and claimed the money by virtue of a contract relating to property in the state which was made void by the statute.

The other contract is one made between the Atlas Company and the bankrupt, and was made in the state of Indiana, November 12, 1903, and covered the period from its date to December 31, 1904. The Empire Company was not a party to it. The bankrupt was made the agent of the claimant to sell its engines and boilers on commission in part of Wisconsin, Iowa, and Illinois, to receive and hold strictly on consignment all machinery shipped by it, to make monthly reports of all merchandise on hand unsold, pay freights, store and keep in good order without charge, pay taxes, keep the goods insured, hold unsold machinery subject to the orders of the claimant, ship it as directed, and pay charges, claimant to refund freights, also to guarantee payment for machinery sold. At the expiration of two years from the date of a shipment unsold goods to be bought and paid for in cash at claimant's option, or loaded on cars as claimant might direct, the bankrupt to pay freights. The bankrupt was also authorized to contract that the claimant would replace defective parts of the machinery, and would guarantee the payment of all accounts; and the bankrupt was to have the benefit of all sales made in its territory as fixed by the contract. The referee decided that this contract created an agency in this state for the sale of engines and other goods of the claimant; that it was a contract relating to property in the state, and was void because claimant did not file its corporate articles; that the claimant depends on this contract, and falls with it. The opinion of the referee is elaborate, and contains a thorough discussion of the questions involved.

Assuming that the agency contract does not relate to interstate commerce, and therefore is invalid if the claimant was doing business in Wisconsin, that question arises. The proper construction of section 1770b is thus presented: Foreign corporations doing business in the state are made to all intents and purposes domestic corporations. Whatever powers their home charters may give them, the statute in question confers upon them the powers of like domestic corporations, and no other. Paragraph 10 of section 1770b was taken verbatim from Illinois, and before its enactment here was there construed to be intended "to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and bring them all under the same law." Stevens v. Pratt, 101 Ill. 206; Santa Clara Academy v. Sullivan, 116 Ill. 375, 6 N. E. 183, 56 Am.

Rep. 776. Of course this construction was adopted along with the statute itself.

Being thus made domestic corporations so far as any business in this state is concerned, they are required to pay a franchise tax on the same basis. By paragraph 3c of section 1770b a foreign corporation is required, under the penalties provided in paragraph 10, to file a statement of the proportion of the capital stock represented in this state by its property here located or to be acquired, and by its business to be transacted here (in case of a corporation intending to do future business), or of the proportion of property and business here for the preceding year (in case of a corporation already doing business). And it is required to pay for filing its articles in the first instance $25, and $1 a thousand upon all the capital employed or to be employed in this state in excess of $25,000, and, in case an additional use of capital is shown in any subsequent report, a like payment of $1 a thousand is to be made on such excess.

In order to secure the payment of this tax and to bring the foreign corporation doing business here within the reach of local process, contracts affecting the liability of the corporation are denied enforcement by it, but left fully enforceable against it, and a pecuniary fine is also imposed. Contracts relating to its rights or privileges are not affected, unless they relate to its property in this state. This distinction was made to leave foreign loan or other like companies free to make unilateral contracts, like bills and notes, beneficial to themselves in this state without being held to do business here, or subjected to penalty. But if the corporation has property in the state, and does business here, it cannot enforce, but is bound by the obligation of contracts relating to such property. Catlin & Powell Co. v. Schuppert, 130 Wis. 642, 649, 110 N. W. 818.

The intent of this legislation is clear, whatever may be the difficulty in applying it. When a corporation employs part of its capital (or all of it) in this state, it should pay accordingly. This is illustrated by the case of a company manufacturing engines and boilers, like the Atlas Company, incorporated in Indiana, and selling its products in a number of states. If instead of doing all its business in its home state, it employs part of its capital in Wisconsin by establishing one or more agencies there, or in any way prosecuting such a definite part of its business there that the amount of capital there employed can be reasonably and substantially estimated, it must file its articles there, and make its annual reports; and if it fails to do so, certain of its contracts are made void so far that it cannot enforce them. Cone v. Tuscaloosa Mfg. Co. (C. C.) 76 Fed. 891.

On the other hand, so long as it confines its business to interstate commerce, it is not affected by local restrictive legislation. It may freely sell through traveling agents, or by correspondence. Even though it maintains a warehouse for the storage of its property pending sale, and until the property loses its character as interstate commerce, and becomes part of the general mass of property in the state, the local statute has no application. Greek Am. Sponge Co. v. Richardson, 124 Wis. 469, 475, 102 N. W. 888, 109 Am. St. Rep. 961; Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Nor-

folk & Western R. Co. v. Sims, 191 U. S. 441, 447, 450, 24 Sup. Ct. 151, 48 L. Ed. 254.

Single or occasional acts of a corporation in another state, such as making a sale or taking a security, where the transactions are not continuous or of a permanent character, are not within such statutes as section 1770b, because the scope of the foreign business cannot be meas-. ured or fairly estimated, and because such occasional acts cannot be properly said to be doing business within the spirit or intent of such statutes, whose object is to subject foreign corporations actually putting themselves within the protection of its laws, and taking the benefit thereof, to the process of its courts, and also to compel them to bear their proper share of taxation. By a single or occasional act within the state, done only as incidental to business elsewhere transacted, no tangible part of their capital is actually protected by the laws of the foreign state, or can properly said to be employed therein. To tax the corporation under such circumstances, or penalize it, is not the purpose of such statutes; and, being highly penal in their character, they should be given a reasonably strict construction. See the discussion by Judge Adams in Ammons v. Brunswick-Balke-Collender Co., 141 Fed. 570, 72 C. C. A. 614, and the cases there cited. See, also, the point fully discussed by Judge Sanborn of the Court of Appeals of the Eighth Circuit in Dunlop v. Mercer, 156 Fed. 545.

But the test of local employment of capital, made by the statute for the purpose of taxation, is not conclusive on the question of doing business in the state, for a foreign corporation may. employ a considerable part of its capital here without coming within section 1770b. Thus it may solicit and fill orders by mail, as do Sears, Roebuck & Co. and Montgomery Ward, and employ nine-tenths of its capital in states other than that of its creation, without "doing business" in any other state. It may likewise do a loan business, and conduct a correspondence school, and many other sorts of business which include the employment of capital in other states, and which do not amount to interstate commerce, without doing business in any other state so as to come within statutes like section 1770b. Chattanooga Bldg. Ass'n v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870.

Tested by these rules, and assuming the business not to be interstate commerce, was the claimant doing business in this state at the time the boiler was delivered to the Empire Company? Certainly it cannot be denied that it was employing part of its capital in this state. The agency contract gave the bankrupt a county in this state as its exclusive territory for the sale of its engines and boilers. A definite and readily ascertainable portion of its capital was thus here employed, so that its tax or license fee was entirely computable. It is therefore clear that, if the employment of capital were the only test, it must be concluded that the claimant was doing business in this state.

Notwithstanding this, does the case fall within the excepted class above mentioned, where a foreign corporation may employ capital without doing business in the state? Claimant's business is the manufacture and sale of engines, etc. It employed the bankrupt for a year, as its agent, to make sale of its machinery in a Wisconsin county. Substantially all the selling it did in that county was done by such

agent. A definite part of its business was done by it through such agent, done for it and in its name. By the rule established in the Supreme Court of the United States and the Supreme Court of Wisconsin claimant was, at the time of the sale of the boiler in question, clearly doing business in this state. Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; Connecticut Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; International Text-Book Co. v. Peterson, post.

But it is urged that the agency contract is not within the statute, because it affects only the right and not the liability of the claimant, because it was made in Indiana, and does not relate to property in this state, since at the time it was made claimant had no property here, and the property referred to in the contract was in Indiana. The case of Chickering-Chase Bros. Co. v. White, 127 Wis. 83, 106 N. W. 797, is relied on. That case holds that a chattel mortgage of property in Wisconsin, made in Illinois before the corporation did any business in this state, is valid. It is further argued that section 1770b must be strictly construed, and cannot include a contract made in Indiana, relating to property in Indiana. The contract in question related wholly to business to be done in Wisconsin, and to property to be sold in that state. This fact brings the case within Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 331, where the contract was made before section 1770b took effect, and where the contract was held not enforceable by the foreign corporation under that section. The contract made by claimant was made with reference to the Wisconsin law, and under that law, apart from the question of interstate commerce, claimant cannot enforce it.

2. That the agency contract relates to interstate commerce seems quite clear. It does not purport to sell anything. No vendor or vendee is mentioned. It was a bailment for sale by a factor under a del credere commission. In re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611; Butler Bros. Shoe Co. v. U. S. Rubber Co. (C. C. A.) 156 Fed. 1, 5. The contract is squarely within the cases of Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336, and Butler Bros. Shoe Co. v. U. S. Rubber Co., supra; and as it provides for the carrying on of commerce between the states, it is not within the provisions of section 1770b of the Wisconsin statutes (Sanborn's St. Supp. 1906), and therefore entirely valid and enforceable by the foreign corporation. The only decision of the Supreme Court of Wisconsin which is cited as holding a contrary rule is International Text-Book Co. v. Peterson (Wis.) 113 N. W. 730. This was a case of teaching by correspondence. An agent of the International Correspondence Schools, of Scranton, Pa., such agent having the power to solicit pupils and submit contracts for correspondence study in Wisconsin, procured a contract from the defendant, who was to take the stipulated course, mail recitations, and pay a certain price for the tuition and certain text-books. He refused to pay for the text-books, and suit was brought to recover their price. There was no question of the fact that the International Correspondence Schools were doing business in Wisconsin, since it maintained a soliciting

agency there. The only question was whether the giving of lessons by mail, furnishing books, etc., was interstate commerce. The court, in a very interesting and forcible opinion, held that the case fell within the distinction made by the Supreme Court of the United States in deciding that insurance between citizens of different states is not interstate commerce. There is nothing in the Wisconsin case which affects, in the slightest degree, the case of a factor's contract for sale in this state of articles made in another. The case of Thomas Mfg. Co. v. Knapp, 101 Minn. 432, 112 N. W. 989, is opposed to the conclusion reached in the case now under consideration, but its reasoning is not satisfactory. Inasmuch as the alleged invalidity of the factor contract is the only reason for a disallowance of the claim, the latter must be held valid.

It is urged, however, that since the boiler in question had been sold by the bankrupt under the agency contract to the American Lead & Zinc Company, and was afterwards taken by the bankrupt and resold to the Empire Mining Company, in carrying out the building contract of the bankrupt with that company, the boiler in question had ceased to be the subject of interstate commerce. This contention is undoubtedly sound, but immaterial; for the real question is whether section 1770b could prohibit the importation of the boiler, and annul the contract under which the importation was made. That question having been answered in the negative, and the contract sustained, it is of no consequence that the boiler, before its sale to the mining company, had become part of the common property of the state. But even though the conclusion that the contract relates to interstate commerce should be held differently, yet I think the claim depends on an implied contract of the Empire Mining Company not within the provisions of section 1770b of the Wisconsin Statutes. The Empire Company purchased the boiler from the bankrupt as the principal contractor. This transaction was between two domestic corporations, and so entirely lawful. The mere fact that it had been originally ordered by the bankrupt from the claimant for the American Zinc & Lead Company, under the factor contract, and had lain six weeks at Cuba City, does not bring the case within the terms of section 1770b. When the Empire Company took it, and was notified by the claimant that the boiler was its property, followed by the lien suit, an obligation in the form of a quasi contract arose, binding the Empire Company to pay for it to the claimant, instead of the bankrupt, with which it had contracted. No contract was made, but the law, in the interests of justice, raised an obligation on the part of the mining company, protected by the mechanic's lien statute. This obligation or quasi contract was not within section 1770b, although claimant was then doing business in this state without having filed its corporate articles. That an implied contract does not fall within statutes like section 1770b, see Powder River Cattle Co. v. Custer County, 9 Mont. 145, 22 Pac. 383, holding that a foreign corporation not having filed its

articles may recover back illegal taxes paid under protest. A similar decision was made in U. S. Express Co. v. Lucas, 36 Ind. 361, where an action for money had and received was sustained, although no suit on the express contract would lie. See, also, the reasoning of the court in Delaware River Quarry Co. v. Bethlehem, etc., Co., 204 Pa. 22, 53 Atl. 533.

It is true that the claimant, in bringing its lien suit in the state court, by mistake claimed as a principal contractor when it should have claimed as a subcontractor. But the Empire Company did not raise any such objection. It agreed to pay the claim, and made a stipulation that it should do so, and allow the trustee and claimant to test the question in this court; and it has paid over the money under this stipulation. The only person who could raise the question of principal or subcontractor, or object to the allowance of an amendment of the lien claim or complaint in the lien suit, has been dismissed out of court by its own request. The argument of Mr. Olbrich, counsel for the claimant, on this point is thoroughly satisfactory. This situation gives the claimant a standing as a lien claimant, but does not compel it to claim under any express contract between it and the Empire Company, since the latter never made any contract with it. The most that can be said is that the Empire Company, having come into the possession of the claimant's boiler, ought to pay for it, either to the claimant or the bankrupt; and the latter has consented that the payment may be made to the claimant. The claimant also has enabled the Empire Company to make the payment to it by enforcing a lien, to the form of which the Empire Company waives all objection. Claimant may therefore insist on its right to the money, even though the factor contract be void, since it is not compelled to claim through that contract.

An order will be entered directing the trustee to pay the claimant the $394.60 in question.