## BELL *v.* ROSSIGNOL.

Where a married woman personally applies to a tradesman for the pur-
chase of groceries, stating that she wishes to open an account in her
own name, and directs the plaintiff to charge the goods to her, and where
in pursuance of this arrangement the goods are delivered at her home
and charged to her, she will be personally liable therefor, notwithstand-
ing the legal obligation of the husband to support his wife, and the
groceries being such as would be a proper support to be provided by the
husband for the family.

FEBRUARY 11, 1915.

Complaint. Before Judge Pendleton. Fulton superior court.
September 9, 1913.

*Joseph W. & John D. Humphries,* for plaintiff.

*Smith & Hastings,* for defendant.

EVANS, P. J. The plaintiff, a grocery merchant, brought suit
against the defendant, a married woman, to recover upon an alleged
indebtedness for groceries. The defendant pleaded that all the
purchases were made for her husband's account, as head of the
family, which was well known to the plaintiff. She did not deny
that the merchandise was furnished or that it was worth the
amounts charged. On the conclusion of the plaintiff's evidence he
was nonsuited. The testimony submitted by him tended to show
that he was a grocery merchant. The defendant applied to him
for credit, stating that she wanted to open an account with him in
her own name, that her husband was a good easy fellow, and al-
lowed himself to be imposed upon, and she ran the house herself.
She directed the plaintiff to charge the goods in her name. The
plaintiff had heard that the husband was a bankrupt at the time
his wife opened the account. In supplying the goods he made out
with each delivery a duplicate statement, one of which was de-
livered with the goods and the other was kept by him. These state-
ments were made out on a printed blank, and the line for the name
was preceded by the capital letter "M." On many of the state-
ments was written the name "Rossignol;" on many, the letters "rs"
followed the capital letter "M," and these letters were followed by
the name of Rossignol; on others appeared only the address, "106
Cherokee Ave.," without any name. When plaintiff called at de-
fendant's home, he always talked to the defendant about the ac-
count and asked her for the money. On some occasions the de-
fendant's husband would be at home and would meet plaintiff at

the door, and would say, "You want to see Cora." The defendant made the payments on the account. The husband brought him one payment, and said that his wife had sent the money to be credited on her account. The groceries were furnished for the defendant, her husband and child. The plaintiff knew that the defendant owned a vacant lot, and that the husband worked sometimes for railroads and that his family lived with him.

There can be no doubt that a married woman on her own credit may by express contract bind herself for the purchase of necessaries for herself and family. It is true that the husband is bound to support his wife and family, but this legal obligation does not prevent the wife from buying on her own responsibility groceries for the support of the family, and personally agreeing to pay for them. In the instant case it is inferable from the evidence, that, unattended by her husband, the wife applied to the merchant for a line of credit to be extended individually to her; that the credit was extended to her and not to her husband; and that the goods were furnished to her on her credit. This amounts to an express contract on her part to buy the goods as an individual.

The facts in the cases of *Freeman* v. *Holmes, 62 Ga. 556,* and *Rushing* v. *Clancy, 92 Ga. 769* (19 S. E. 711), are dissimilar from those of the case at bar. In the former case a husband accompanied his wife and child to the office of a dentist, and introduced them to the dentist. Under these circumstances it was held there could be no recovery against the wife for dentistry done for herself and child, especially where it appeared that the dentist knew nothing about her having any separate estate, and impliedly gave credit to the husband and not the wife. In the latter case, the wife and her husband applied for board, but the husband took no part in the negotiations; and it was held that in the absence of an express promise by the wife to charge herself or her separate estate, the board contracted for being such as her husband was bound to furnish to her and her children, the husband and not the wife was liable therefor. In both cases the husband was present when the services and board were contracted for, and, in the absence of an express contract by the wife to pay for same, the implication was that the credit was extended to the husband. In the instant case there was evidence that the wife, without being attended by her

, husband, applied for credit and requested the goods be charged to her. The court erred in sustaining the motion for nonsuit. .

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*