23461. · TURNER *v.* PRIEST.

Decided December 1, 1933.

*Morris Macks, Duke C. Meredilh,* for plaintiff in error.

*Lovejoy Harwell,* contra.

Sutton, J.   The defendant rented certain rooms from the plaintiff.   The plaintiff furnished to the defendant's wife and child meals at a stipulated price per meal.   The plaintiff had a sign in

front of the house with the wording "Rooms & Board" thereon. The defendant paid the rent due for the rooms occupied by his family and himself, but did not pay the plaintiff for the meals. furnished his wife and child. The plaintiff moved away from the house, but the defendant remained therein occupying the rooms and retaining possession of his household effects therein. Four days after the plaintiff had moved away from the house, she made affidavit in the municipal court of Atlanta, under section 3366 of the Civil Code, that she was a boarding-house keeper, that the defendant was due her a stated sum for meals furnished his wife and child, and that payment had been demanded of the defendant and refused. Execution issued on this affidavit and was levied upon his household effects in the rooms occupied by him at the house from which the plaintiff had moved. The case proceeded to trial, and the evidence was conflicting as to whether the defendant was due such sum. However, the evidence undisputedly showed that the plaintiff had moved away from said house before instituting the lien foreclosure proceedings, and that the property levied upon was in the possession of the defendant and in the rooms occupied by him on which the rent had been paid and in the house which had been vacated by the plaintiff. The defendant moved for a new trial, the motion was overruled, and he appealed to the appellate division of said court. The judgment of the trial judge was affirmed by the appellate division, and the defendant filed a petition for certiorari, which was overruled by the superior. court; and to this judgment he excepts.

■ Headnotes 1, 2, and 3 do not require elaboration.

■ Does the property of a delinquent boarder, where it is in his possession and the boarding-house keeper has voluntarily relinquished possession and control thereof to the boarder, if any she had, still remain subject to the lien created by statute in favor of boarding-house keepers? There can be no question but that the defendant is liable for the board furnished to his wife and child; and so he stands upon the same footing as if he himself had been furnished board. Chickering-Chase Bros. Co. *v.* White, 127 Wis. 83 (106 N. W. 797); Baker *v.* Stratton, 52 N. J. L. 277 (19 Atl. 661); *Bell* v. *Rossignol,* 143 *Ga.* 150 (84 S. E. 542, L. R. A. 1915D, 1184, Ann. Cas. 1917C, 576); *Hamilton* v. *Jenkins,* 7 *Ga. App.* 136 (66 S. E. 397); *Wrightsville &c. Ry. Co.* v. *Vaughan,* 9

*Ga. App.* 371, 378 (71 S. E. 691); Civil Code (1910), §§ 2996, 2997. This brings us to determine whether the plaintiff's lien, if she had any, as a boarding-house keeper still remained effective as to the property of the defendant seized under the foreclosure proceedings in this case.

At common law a boarding-house keeper had none of the privileges of an innkeeper, and could not detain the baggage and effects of a delinquent boarder which were in the boarding house. This State and other States of the Union have enacted 'laws placing boarding-house keepers upon the same footing as to the privileges of an innkeeper in detaining the baggage and effects of a delinquent guest to pay for his charges. The lien given to such innkeepers and boarding-house keepers is not created by contract, but by law. Statutes giving to boarding-house keepers a lien on the goods of their boarders and the means to enforce the same are in derogation of the common law and should be strictly construed. *Downs* v. *Bedford,* supra, 155 (2); *Wooten* v. *Ford,* 46 *Ga. App.* 50 (166 S. E. 449).

By the act of February 24, 1873 (Acts 1873, p. 45), innkeepers and boarding-house keepers were given a lien for their dues on the baggage of their guests. It provided the manner in which innkeepers and boarding-house keepers "in possession of personal property under a lien for fees" should satisfy their lien, which should be superior to other liens, except liens for taxes, special landlord's liens for rent, liens of laborers and general liens of which they had actual notice "before the property claimed to be subject came into their control." Code of 1882, § 1986. The Civil Code of 1910, § 3368, provides that "Liens of pawnees, innkeepers, boarding-house keepers, livery-stablemen, and attorneys at law in possession of personal property under a lien for fees shall be satisfied according to the provisions of section 3530 of this Code, in cases where there is no notice of conflicting liens; but if there is a conflicting lien, the mode of foreclosure pointed out in section 3366 shall be pursued." One method was by sale to the highest bidder, after thirty-days notice to the guest. Section 3530 of the Civil Code (1910) is as follows: "The pawnee may sell the property received in pledge after the debt becomes due and unpaid; but he must always give notice for thirty days to the pawner of his intention to sell, and the sale must be in public, fairly conducted, and to the highest bid-

der, unless otherwise provided by contract." This method undoubtedly contemplated that the boarding-house keeper adopting it should have possession of the property at the time of the sale. The other method was as provided by section 3366 of the Code, and is the method adopted or undertaken by the plaintiff in this case. This section applies to all liens on personal property, where there is not another method of foreclosure thereof provided by statute. We are not called upon to determine whether or not the plaintiff could proceed to enforce her boarding-house keeper's lien under this section, where there was no conflicting lien. Under this section the execution shall be issued instanter against the person owing the debt and the property on which the lien is claimed, or which is subject to the lien; and can only be issued upon the filing of an affidavit by the person claiming the lien, which shall show all the facts "necessary to constitute a lien" on the personalty involved. It seems that the policy of the law as to innkeepers, boarding-house keepers, and all pawnees and depositaries for hire is that they shall have a lien on the personalty deposited or pawned with them until they are paid for their services, but that they lose such lien by a voluntary surrender to the debtor of the property on which the lien is claimed. See Acts 1873, p. 45; Civil Code (1910), §§ 3363, 3501, 3506, 3515. "The innkeeper has a lien on the goods of all his guests for all his reasonable charges, and may retain possession until they are paid." Civil Code (1910), § 3513. On August 20, 1923, the legislature of this State broadened the then-existing law relative to the liens of innkeepers and boarding-house keepers, at least as to the property of their guests which would be subject to their lien. This act did not expressly repeal the above-quoted section of the Code, and it is not necessary, for a determination of this case, to pass upon whether there was a repeal by implication, in that the act of 1923 superseded that section. This act provides that "the keeper of every hotel, inn, boarding-house, lodging house and eating house in the State of Georgia shall have a lien on all furniture, baggage, wearing apparel and other property brought into such hotel, inn, boarding house, lodging house or eating house by any guest or patron of the same . . to secure the payment by such guest or patron of all sums due for food, lodging or other accommodation. . . The keeper of such hotel, inn, boarding house, lodging house or eating house claiming the lien

may retain possession of the property against which the lien is claimed." The act then provides how the hotel or boarding-house keeper may advertise and sell such property at public sale. Ga. L. 1923, p. 101. It will be seen from this act that it contemplates that the possession of the property on which the lien is claimed shall be in the lienor at the time the lien is enforced. So it is our opinion that when a boarding-house keeper voluntarily surrenders possession of the property on which she has a boarding-house keeper's lien for board due her, she thereby loses her lien thereon. It necessarily follows, where she abandons her boarding house, leaving the delinquent boarder in free possession of his goods, that this constitutes a voluntary surrender of the goods of the boarder on which she could claim a lien for money due her for furnishing meals to his wife and child.

This view is in line with the great weight of authority. 32 C. J. 569. If the innkeeper parts with possession of the property of his guest the lien is lost. Bacon, Abr., Inns and Innkeepers, D; Jones v. Pearle, 1 Strange, 556, sub nom. Jones v. Thurloe, 8 Mod. 172. The lien in favor of an innkeeper consists in his right to retain the possession of the chattels in opposition to the title of the owner until the charge respecting them is paid, and if the possession is voluntarily surrendered, without fraud, to the guest or owner, the lien is at an end. Hickman v. Thomas, 16 Ala. 666; Danforth v. Pratt, 42 Me. 50; Manning v. Hollenbeck, 27 Wis. 202. By parting with the possession of the property on which he has a lien, the lien is lost. If the owner gets the property into his own hands without fraud, the lien is ended. Moss v. Townsend, 7 Bulst. 206, 217; Bevans v. Waters, 3 Car. & Payne, 520; Sweat v. Pym, 1 East. 4, 5 Mees. & Wel. 312. The detention of the property of the guest by the innkeeper is necessary to hold the lien, and if he parts with his possession of it, the lien is lost, and he can not afterwards retake the property. Willcock on Inns, 79; Jacobs v. Latour, 5 Bing. 130; Grinnell v. Cook, 3 Hill (N. Y.) 486 (38 Am. D. 663); Bird's Select Cases, 50; Wandell on Inns, Hotels and Boarding Houses, 181, 182.

So it follows that a judgment of the court below finding the defendant's property subject to the lien of the plaintiff would not have been authorized by the evidence in the case, and, as we have

seen, the general judgment against the defendant could not be properly rendered in such lien-foreclosure proceeding.

*Judgment reversed.* *Jenkins, P. J., concurs.* *Stephens, J., concurs in the judgment.*