34593. HERRING *v.* HOLDEN.

Decided May 14, 1953.

*George E. Saliba,* for plaintiff in error.

*Conway & Smith, Walter Smith,* contra.

SUTTON, C. J. Dr. William H. Holden sued L. F. Herring for $250 as the balance due upon an account for professional services rendered to the defendant's wife. A statement of the account attached to the petition was addressed to Mrs. L. F. Herring; it showed a charge of $300 for a naso-plastic operation on May 6, and a payment of $50 on May 26, 1952. In an amendment to his petition, the plaintiff alleged that the defendant and Mrs. Herring are husband and wife, and live together; that the medical services were procured by the defendant's wife as his agent, "she being authorized by him so to do, and the same being necessary, and her said husband being legally responsible for said services."

The defendant denied the indebtedness, and alleged in his answer that he did not enter into any agreement with the plaintiff for the services described or for any services, and did not authorize, expressly or by implication, any other person to arrange, contract for, or incur on his behalf the obligation asserted against him by the plaintiff.

The defendant admitted that Mrs. L. F. Herring was his wife, but alleged that the naso-plastic operation was contracted for by her independently of him; that his wife sought the operation to improve the size and shape of her nose for better personal appearance and for better photographic effect incident to her profession as a model; that the defendant neither approved of nor consented to the operation and did not agree to pay for it, which was communicated to and well known to the plaintiff before the operation was performed.

The defendant also alleged in his answer that the operation performed upon Mrs. Herring did not result in the size and shape of nose contracted for by her; and that there was a total failure of consideration to support the plaintiff's claim.

The case was tried before a jury, which rendered a verdict for the plaintiff in the amount sued for. The defendant's motion for new trial as amended was overruled, and the exception here is to that judgment.

1. "The husband shall be bound to support and maintain his wife, and his consent shall be presumed to her agency in all purchases of necessaries suitable to her condition and habits of life, made for the use of herself and the family. This presumption may be rebutted by proof." Code § 53-510. A husband is primarily liable, as under an implied contract, for necessary medical attention and professional services rendered to his wife, and even in the absence of his consent, except where there is an express contract by the wife to pay for such services, or an assumption of individual liability on the wife's part, exclusive of her husband's liability. *Scott* v. *Simpson,* 46 *Ga. App.* 479 (167 S. E. 920); *Fincher* v. *Davis,* 27 *Ga. App.* 494 (108 S. E. 905). In other words, the presumption of the husband's liability for necessaries furnished to his wife may be set aside by showing an express agreement, between the wife and the person furnishing the necessary goods or services, that the wife is to be personally liable therefor. *Connerat* v. *Goldsmith,* 6 *Ga.* 14; *Bell* v. *Rossignol,* 143 *Ga.* 150 (84 S. E. 542); *Goodson* v. *Powell,* 9 *Ga. App.* 497 (71 S. E. 765); *Morrison* v. *Evans,* 31 *Ga. App.* 256 (120 S. E. 430); *Shaw* v. *Allen & Co.,* 34 *Ga. App.* 111 (128 S. E. 699); *Morris* v. *Shaw,* 44 *Ga. App.* 222 (3) (160 S. E. 820); *Alexander* v. *Duffee-Freeman Furniture Co.,* 52 *Ga. App.* 244 (183 S. E. 86); *Butler* v. *Godley,* 51 *Ga. App.* 784 (3) (181 S. E. 494); *Williams* v. *Stark,* 75 *Ga. App.* 668 (44 S. E. 2d 300). As stated in *Morris* v. *Root,* 65 *Ga.* 686, 689 (4), "The contract of the wife for goods sold to her upon her own credit alone, is not binding on the husband, though the seller may have expected her to get the money from the husband."

The plaintiff, Dr. Holden, testified that he practiced medicine and plastic surgery in association with Dr. William L. Barton; that he agreed to perform the operation for $300; that Mrs. Herring made a payment of $50 shortly after the operation and refused to pay the balance of $250 sued for; that he first met the defendant on the day of the operation, at the hospital, after the operation. "I considered the operation necessary from the standpoint of her health. *She agreed to pay for the operation.* Her husband never complained about the fee. . . I had no dealings with Mr. Herring. I never billed him for the operation. The charges entered on my records, which I brought with me,

do not show the name of Mr. L. F. Herring. My dealings were with Mrs. Herring exclusively. Mrs. Herring did not mention her husband. I did not ask what kind of work he did. . . Her husband never said that he would not pay for the operation. I presumed that he would pay for the operation."

Dr. William L. Barton testified that both he and Dr. Holden, the plaintiff, participated in the operation. "I don't recall that she complained about the operation. *She agreed to pay for it.* I believe it was $300. Dr. Holden handled the financial details. I don't remember ever having seen Mr. Herring. I never talked with him. I didn't know whether she was married or not."

The defendant's wife testified that she was a professional model and a teacher of courses in charm and modeling; that her nose was too large for her face and did not photograph well; that she went to see Dr. Barton in March, 1952, and returned for another consultation and examination three weeks later, when she saw Dr. Holden too. "At that time I asked Dr. Holden whether I could pay for the operation in installments. . . I went back some time in May. Although I had discussed the operation with my husband, he never consented to it." In May, she testified, she decided to have the operation done. "My husband first learned of my visits to the doctors after my second visit to them. He never consented to the operation. I made up my own mind about having it done and I intended to pay for it myself. I told Dr. Barton that I would pay for it the first week in July. . . I never intended to have the operation on my husband's credit. He was very much opposed to the operation. No mention of my husband was made at any time in my dealings with the doctors. I intended and expected to pay for the operation myself. The doctors charged the cost of the operation to me on their books. They sent me one statement of the account after the operation. It was addressed to me, Mrs. L. F. Herring. . . No bill for this operation was ever addressed to Mr. Herring. I received one letter demanding payment. That letter was received from the doctor's attorneys, Conaway and Smith. It was addressed to me personally. . . . One payment—$50—was made on the account. That payment was made by me with a check drawn on the First National Bank and signed by me."

The defendant, L. F. Herring, testified that his wife asked him whether he would consent to the operation; that he told her that he could not see the need of it and that her nose looked all right to him as it was; that the understanding between his wife and him was that she was to pay for the operation from the money she was making from modeling and fashion shows and teaching charm; that he drove his wife to the hospital when she went there for the operation; that she made up her mind to have it performed, but he did not approve of it; and that she was going to pay for the operation.

While there was some conflict in the evidence as to whether or not the operation was physiologically or psychologically necessary to Mrs. Herring, it conclusively appears that she intended to assume the liability for it as her own and signified her intent to do so to the plaintiff and his associate, Dr. Barton, by expressly promising to pay the agreed charge for the operation. The plaintiff's testimony that he presumed the defendant would pay for the operation is insufficient to raise an issue as to whether credit was extended to the defendant rather than to his wife, since it was not shown that Mrs. Herring was told of this or notified that her promise to pay was not accepted. See *Shaw* v. *Allen & Co.*, 34 *Ga. App.* 111 (supra). The presumption of the defendant's liability as a husband for necessaries furnished to his wife was rebutted and overcome, as a matter of law, by the uncontroverted evidence that the plaintiff performed the operation on the defendant's wife upon her credit alone, and on her express promise to pay for the operation. The verdict for the plaintiff against the defendant was not authorized.

2. The letter from the plaintiff's attorneys to Mrs. Herring, demanding payment of the account by her, should have been admitted in evidence as one of the circumstances tending to show that the plaintiff had extended credit to Mrs. Herring and not to her husband, as contended in special ground 4 of the motion.

The court did not err in refusing to give the written requests to charge the jury, upon the issue of whether the services rendered were those contracted for, as set out in ground 5, and as to a married woman's legal capacity to contract for herself, as

set out in ground 6; the charge as given by the court adequately covered the matters set out in these requests. The request to charge as to the invalidity of a parol promise to answer for the debt of another, as stated in ground 7, was properly refused, as there was no evidence of an oral promise by the defendant to pay for his wife's operation.

3. The court erred in overruling the motion for a new trial. *Judgment reversed. Felton and Worrill, JJ., concur.*